### In re LOTTA WATER LAND COMPANY, Debtor.

### In re Joe Frank HUCKERT and Rita Sue Huckert, Debtors.

### Cary SCHACHTER, Trustee, Plaintiff,

### v.

### Joe Frank HUCKERT and Rita Sue Huckert, Defendants.

**Bankruptcy Nos. 281–00031, 281–00040. Adv. No. 282–0014.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

July 30, 1982.

Cary Schachter, Whittenburg, Whittenburg & Schachter, Amarillo, Tex., for Cary Schachter, trustee.

John Huffaker, Gibson, Ochsner & Adkins, Amarillo, Tex., for Joe Frank Huckert and Rita Sue Huckert, debtors.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Cary Schachter, trustee, filed complaint against the debtors, Joe Frank Huckert and Rita Sue Huckert, contending that fruit of a post-petition, preconversion business transaction entered and performed by Joe Frank Huckert is property of the debtors' estate. Resolution of the issues require consideration of the provisions of §§ 541(a)(6) and 541(a)(7) of the Bankruptcy Code. The following summary constitutes the findings of fact.

The debtors, Joe Frank Huckert and Rita Sue Huckert, were the sole stockholders in Lotta Water Land Company, a New Mexico farming corporation. They conducted farming and ranching activities on land owned by the corporation through that corporation. In addition, custom farming activities for others were conducted through the corporation.

On February 25, 1981, Lotta Water Land Company, Joe Frank Huckert and Rita Sue Huckert filed "joint voluntary petition under Chapter 11." The basis for the joint petition, as reflected by those pleadings, was the allegation that "Joe Frank Huckert and Rita Sue Huckert are subject to various

contingent liabilities as a result of their ownership and operation of Lotta Water Land Company." Thereafter on March 5, 1981, Joe Frank Huckert and Rita Sue Huckert filed separate petition for order for relief under Chapter 11 and from that date the Chapter 11 activities of the individuals and of the corporation proceeded in separate cases.

On March 13, 1981, the corporate debtor-in-possession entered into a contract with Frito-Lay, Inc. for the production by the corporation on its farm land and sale to Frito-Lay of 8,000,000 pounds of food grade corn at $7.70 cwt. The corporation filed a proposed operating plan on April 13, 1981, citing its rights under that contract with Frito-Lay, Inc. as the primary prospective source for payments to creditors.

It is apparent that performance of that contract should have resulted in gross proceeds of $616,000.00 to the corporation. However, the corporate debtor-in-possession required a line of credit ranging from $300,000.00 to $400,000.00 to cover the anticipated expenses of operating the farm and producing the corn. Its negotiations for access to such funds for farm operations fell through and on May 14, 1981, Joe Frank Huckert, as president of Lotta Water Land Company, the corporate debtor-in-possession, announced that operating monies could not be obtained and that the operating plan could not be submitted for confirmation. The corporation could submit no alternate operating plan and no party in interest submitted a plan. On June 26, 1981, Lotta Water Land Company filed its liquidating plan under Chapter 11.

As reflected by the fact that they initially attempted to file a joint Chapter 11 petition with the corporation, the individual debtors were closely identified with, and heavily dependent upon, the corporation. All farming activities on the corporate farm and custom farming for others were conducted by the corporation with Joe Frank Huckert drawing a salary for his services as president and manager. The individual debtors owned only nominal nonexempt assets and

their scheduled liabilities of more than $3,000,000.00 stemmed primarily from their contingent liability on the corporate debts. Notwithstanding the fact that they had few, if any, assets to "liquidate" they also filed a liquidating plan under Chapter 11 on June 26, 1981.[1]

From May 14, 1981, when Huckert announced that the corporation could not submit an operating plan, that corporation was moribund. It was apparent to the individual debtors that all of the farm land and equipment would be liquidated, primarily for the benefit of those creditors who held security interest in that real and personal property. The individual debtors were cut off from the corporate salary which they had been drawing and were faced with the necessity of making a living in some other manner. Joe Frank Huckert leased a combine from relatives and commenced engaging in custom farming and custom harvesting activities on a full time basis. In the period of approximately six months between May 14, 1981, when the death of the corporation was apparent, and November 9, 1981, when the cases were converted to Chapter 7, Joe Frank Huckert grossed between $30,000.00 and $40,000.00 from those custom farming and harvesting activities. The precise amount of receipts is not apparent from the record, because no accounting for the income from custom harvesting was ever filed by debtors with the United States Trustee.

By late August 1981, it was apparent that the corn market was in continuous decline. Joe Frank Huckert decided to contact Frito-Lay, Inc. and determine whether there was any life remaining in the contract which it had made with Lotta Water Land Company. He inquired from the cognizant official of Frito-Lay, Inc. as to whether Frito-Lay would make the same contract with him, individually, if he could obtain the 8,000,000 pounds of food grade corn from other producers. He received an encouraging response and for the next two or three weeks he made inquiries in the area

1. Order denying confirmation of the liquidating plan was entered on September 24, 1981.

to determine whether that amount of corn was available and whether he could purchase it. On a date in mid-September 1981, Huckert called the cognizant official of Frito-Lay, Inc., told them that he could obtain the 8,000,000 pounds of food grade corn, and a bargain was struck for Joe Frank Huckert to provide that corn at the same rate of $7.70 cwt. No new contract was executed by the parties and they merely struck through the name of "Lotta Water Land Company" on the March 13, 1981 contract and substituted the name of "Joe Frank Huckert."

During this entire period Huckert was still individually engaged in custom harvesting activities. However, he made the necessary arrangements with farmers in that area for the purchase of their corn at prices closer to the market than that for which he had contracted to sell to Frito-Lay, Inc. Harvesting of the corn commenced in early October 1981. From the corn which he purchased from farmers and delivered to Frito-Lay, Inc. Joe Frank Huckert received the gross sum of $664,449.49.[2] He disbursed to the farmers from whom he purchased the corn and to those who hauled the corn the sum of $534,884.17. The trustee and the individual debtors are competing for that differential of $129,565.32.

The case was converted to one under Chapter 7 on the debtors' application filed November 9, 1981.

The debtors argue that the subject $129,565.32 is not property of the estate, because it represents earnings from services performed by the individual debtor after the commencement of the case and thus is excepted from property of the estate by virtue of the provisions of § 541(a)(6). They recognized that any interest in property that the *estate* acquires after the commencement of the case constitutes property of the estate within the meaning of § 541(a)(7). However, they say that the

filing of the Chapter 11 petition by the debtors actually resulted in the coexistence of two separate interests—that of the debtors-in-possession and that of the individual debtors. Further, they say that the property contemplated by § 541(a)(7) is that interest in property which is acquired by the *debtors-in-possession* as a result of conduct of the business which the debtors-in-possession had conducted prior to the time the bankruptcy petition was filed. The subject business transaction was not one of the type which the debtors-in-possession had ever conducted. The debtors insist that it was the individual debtors, and not the debtors-in-possession, who performed services which resulted in production of the net proceeds of $129,565.32 and that the subject monies never became property of the Chapter 11 debtors-in-possession. Further they say that there was never a viable Chapter 11 proceeding for the individuals, and that the only debts which the individuals owed were those corporate debts for which they had contingent liability. They argue that they could have filed a Chapter 7 proceeding in the beginning, but that they had filed the liquidating plan in order to assist the secured creditors in obtaining the maximum amount from sale of assets and to avoid the expenses of a trustee under Chapter 7. Finally, they contend that the trustee is estopped to contend that the monies belong to the Chapter 7 estate, because several of the creditors had consented, expressly or impliedly, to the performance of the contract by Joe Frank Huckert, individually.

 If the individual debtors had filed Chapter 7 petition in the beginning, or if they had converted the Chapter 11 petition to one under Chapter 7 before entering into the contract with Frito-Lay, Inc., an argument that the fruit of that contract never became property of the trustee could be

---

**2.** The first receipts from Frito-Lay were on November 4, 1981, with the last receipts on December 3, 1981. Debtor argues that it is significant that only $96,142.67 had been received by Huckert prior to November 9, 1981, when the case was converted to one under Chapter 7 on

the debtors' application. However, debtors' obligation under the contract had been completed and the right to receive the entire contractual amount had become fixed prior to that date of November 9, 1981.

persuasive.[3] They have selected the chapter under which their bankruptcy proceedings have been conducted. Notwithstanding the fact that the corporation had no prospects of rehabilitation and that there were no assets which the individual debtors-in-possession could utilize in formulating a viable operating plan, the individuals were under the protection of the court in Chapter 11 proceedings at the time the contract was entered and performed with Frito-Lay, Inc. I recognize that personal earnings of an individual are excepted from "property of the estate" by virtue of the provisions of § 541(a)(6). In that regard, the income from custom harvesting earned by the individual debtors during the period of the pendency of the Chapter 11 case are personal earnings and there is no requirement that accounting for those earnings be made. Those earnings did not become property of the estate. *See Fitzsimmons v. Walsh,* 20 B.R. 237, 9 B.C.D. 154 (9th Cir. Bkrtcy.App. Panel, 1982). However, the fruit of the business transaction does not fall within the category of "earnings from services performed by an individual debtor," but is an interest in property that the estate of the debtor acquired after the commencement of the Chapter 11 case and prior to the time that it was converted to one under Chapter 7. The provisions of § 348(a), making retroactive to March 5, 1981, the effective date of filing of the converted case, affords debtors no relief on this issue.

The estoppel argument advanced by the debtors is without merit. Assuming, without finding, that the attorney for the creditors' committee, and the attorney for Farmer's Home Administration had actually advised the debtors that the Frito-Lay transaction did not constitute estate property there is no privity with the trustee which would make those assertions binding on him.

I conclude, therefore, that the proceeds of the custom harvesting operation by Joe Frank Huckert and Rita Sue Huckert approximating $30,000.00 to $40,000.00 are personal earnings which did not become property of the estate.

I conclude, further, that the net proceeds of $129,565.32 from the business transaction with Frito-Lay performed by Joe Frank Huckert is an interest in property acquired by the estate after the commencement of the case and that the trustee, Cary Schachter, is entitled to receive those proceeds as property of the bankruptcy estate.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The Clerk is directed to file this memorandum and to furnish a copy of the memorandum to the attorneys of record.

---

**3.** The conclusion evidenced by this statement assumes that the trustee for the corporate debtor would not revive his unproved contention that the individual debtors, as insiders, had usurped the corporate opportunity.