**In re SUTTON INVESTMENTS, INC., Robert B. Sutton, Debtors.**

**Bankruptcy Nos. 484–00438–LO–11, 484–00439–LO–11.**

United States Bankruptcy Court, W.D. Louisiana.

May 31, 1985.

Robert P. Brenham, Lafayette, La., for trustee.

Hugh William Thistlethwaite, Opelousas, La., trustee.

Janice Alperin, Washington, D.C., for the U.S. Dept. of Energy (D.O.E.) and the Internal Revenue Service (I.R.S.)

William Patrick and William Steffes, Baton Rouge, La., for debtors.

John Hutchison, Lafayette, La., for P.J. Sutton.

## FINDINGS AND CONCLUSIONS

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter comes before the court upon the trustee's motion for instructions regarding payment of living expense to the family of the debtor Robert B. Sutton.

The captioned Chapter 11 cases were filed on April 25, 1984. On April 25, 1984 the trustee was appointed. Since his appointment, the trustee has been engaged in locating and securing property of the estate, disposing of property not essential to the reorganization process and attempting to revitalize certain of the debtors' businesses, worthy of attention. No plan has yet been filed.

Robert B. Sutton is the sole stockholder of Sutton Investments, Inc. which has numerous subsidiaries, established for various purposes. Prior to the filings of the Chapter 11 cases Sutton was principally engaged in the buying and selling of oil, chiefly through one of his corporations, B.P.M., Ltd. At one time he estimated his worth at $150 million. His holdings included real estate in Oklahoma, Louisiana, California, Texas, Arizona and a hotel and residences in the Bahamas, a plastics factory

in Denver, Colorado, a marine terminal, tank plant and various other facilities scattered far and wide.

It was the marketing of oil at huge profits through miscertification contrary to the D.O.E. regulations that brought about Sutton's downfall. The D.O.E. has succeeded in securing a judgment against Sutton and Sutton Investments for in excess of $400 million plus per diem interest of 132 thousand odd dollars. Additionally, Sutton has been convicted of obstruction of justice and is presently serving a five year term in the federal prison at Fort Worth, Texas. While incarcerated, he was again convicted of bribery, conspiracy and racketeering for which he was sentenced to two four year terms to run concurrently but consecutive to the present sentence which he is serving. Additionally he was fined $105,000.00.

In Sutton's absence, his wife and two minor children, which he adopted, have been living in the residence at Breaux Bridge, Louisiana. This plantation style home is said to contain 16,000 square feet and has cost the estate in excess of $10,-000.00 per month to maintain. The expenses in connection therewith include insurance, utilities, a security system, guard service, yard and building maintenance and house servants. Additionally, the trustee has paid the living and travel expense of the wife, P.J. Sutton, and the children. The travel entailed visits by P.J. Sutton to the prison in Fort Worth and to Washington, D.C. for the second criminal trial. The trustee justified the expenditures for Mrs. Sutton's travel by reason of the fact that she was an intermediary between him and Sutton and able to smooth over some of the rough spots in the rather rocky relationship between Sutton and the trustee.

The trustee, having now concluded that the Breaux Bridge residence is burdensome and unnecessary to a successful reorganization, has noticed his intention to sell this property within the next few weeks. Mrs. Sutton and the children will be housed in another residence purchased by the trustee for that purpose. This purchase was made with court approval after notice and opportunity for a hearing. No creditor objected.

The trustee now seeks direction concerning whether or not he should pay the living expense of Mrs. Sutton and the children. Heretofore, the trustee has given Mrs. Sutton $500.00 per week in addition to the payment of medical and clothing bills. She testified that, although it would be difficult, she could "make it" on $500.00 per week. She was unsure, she testified, what her rent payment might be but anticipated medical bills of $400.00 per month (she is seeing a psychologist), $200.00 per month for clothing, $100.00 for cleaning, $100.00 for entertainment, in addition to food, utilities, school supplies and the like, all totalling well in excess of the $500.00 per week which she claims should be a minimal allowance. No formal objection was filed and indeed none was required in order to join issue. The trustee's application simply requested direction from the court and all creditors were given notice of the hearing thereon. The only creditor appearing was the Department of Energy, through its attorney. The attorney did indicate that the Internal Revenue Service was opposed to any allowance for the debtor's family and that she would argue on behalf of the Service. In that regard she has cited and provided a copy of the unreported case of *United States of America v. Lohvlohn H. Reynolds* No. 1–85–66 of the docket of the United States District Court for the Eastern District of Tennessee. In that case the bankruptcy court had previously granted monthly payments to the debtor to be made out of a unitrust for a period of three months. When the debtor attempted to extend the payments indefinitely the United States (I.R.S.) appealed the bankruptcy court's order granting the extension. The district court reversed. The parties agreed that there was no provision in the bankruptcy law permitting a charge upon the Chapter 11 estate for support of the debtor. The debtor argued that the bankruptcy court could apply equitable principles and grant support. The district court found, however, that the assertion of this equitable principle was at the least a "can of worms"; that Congress had not seen fit to

"grant a niche in the bankruptcy armor" authorizing such support payments.

The above-cited case is neither binding, persuasive nor a proper and correct holding. While it is true that the filing of a Chapter 11 case creates an estate, 11 U.S.C. § 541, just as it does in Chapter 7, except for exempt property the entirety of this estate, less expense of administration, must be used only for the payment of creditors' claims in Chapter 7. Not so in Chapter 11. In Chapter 11 the plan controls the distribution, if any, of the property of the estate. Whatever plan is proposed, accepted and confirmed controls the distribution. A confirmed plan may well reserve property to the debtor free and clear of creditors' claims. It is a fact that no plan has been filed in this case and the debtor's exclusive right to file a plan has long since been lost. What type of plan, if any, will emerge is anyone's guess. Be that as it may and even considering the fact that Mr. Sutton is living room and board free, courtesy of the taxpayers of the United States, the duty to support his wife and family remains with him. If he were a debtor in possession and free to operate his own businesses there can be no doubt that this court would allow him some compensation. The mere fact that the trustee controls the estate and operates the business affairs of the debtor is insignificant.

Contrary to the conclusion reached by the *Reynolds* court, this court concludes that, although there is no specific authority for granting an allowance, there is neither a specific prohibition against it. General authority to grant the allowance lies in 11 U.S.C. § 105. The debtor is allowed the sum of $1500.00 per month, commencing May 15, 1985 and to continue pending further orders of this court, for the support of his wife and minor children. An order to that effect will be signed upon presentation.