In re Richard **BRUSSEAU** and Myrna Brusseau, d/b/a Dakota Express, Debtors.

**Bankruptcy No. 83–05215.**

United States Bankruptcy Court, D. North Dakota.

Dec. 4, 1985.

David Johnson, Fargo, N.D., for debtors.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court to consider a Motion for an Ex Parte Order confirming the Debtors' Second Amended Plan of Reorganization. On January 28, 1985 the Debtors filed an Application for Confirmation pursuant to § 1129(b)(1) commonly known as the "cramdown" provision. Under the Second Amended Plan, unsecured creditors are to be paid $12,000.00 in deferred cash payments distributed on a pro-rata basis. Objections were filed by Citizens State Bank of Pembina, G.M. Petroleum Dist., Inc., and North Central Jobbers, Inc., all unsecured creditors, on the basis that the Debtors own free and clear of encumbrances, a 1980 Peterbilt Tractor valued by the various creditors to be between $25,000.00 and $40,000.00 and that they also have equity in a 1981 Alloy Trailer, neither of which are considered by the Debtors, as estate property in arriving at payments under their Plan of Reorganization. Without referring to specific provisions to support their objection, the creditors allege that they will not receive as much under the Plan as they would in a Chapter 7 liquidation.

## FINDINGS OF FACT

The Debtors, Richard and Myrna Brusseau, state in their bankruptcy petition that they are engaged in the farming and commercial trucking business. Prior to filing their petition, the Debtors had entered into a purchase contract with I.T.T. Industrial Credit (ITT) for the purchase of two Peterbilt Tractors. One of the tractors, a 1980 Peterbilt Truck/Tractor, serial number 133354P, was subsequently sold on contract to Richard and Connie Wilson who later defaulted on their payments to the Debtors which precipitated, at least in part, a default by the Debtors on their contract

with ITT. Pursuant to an agreement between the Debtors, the Wilsons, and ITT, Wilsons returned the Peterbilt Tractor to the Debtors and ITT agreed to enter into a separate retail installment contract regarding the Peterbilt Truck. The Debtors have apparently made all payments pursuant to the agreement and now hold the Peterbilt Truck free of any security interests. The status of the Debtors' purchase contract for the trailer and the equity in that trailer has not been clearly presented to the court. Without presenting evidence as to value of the Peterbilt Truck, counsel for the Debtors indicate the truck is valued at $20,-000.00 with the objecting parties believing that the truck is valued between $30,000.00 and $40,000.00.

The Second Amended Plan of Reorganization proposes to pay unsecured creditors $100.00 a month for ten years for total payments of $12,000.00 which, when reduced to present value, would have a value of substantially less than $12,000.00 as of the plans confirmation date. The Debtors' liquidation analysis, included in the Amended Disclosure Statement which is reflective of the Debtors financial condition as of October 30, 1984, lists a value of unsecured assets of the estate of $20,450.00, less administrative priority claims of $11,349.94, leaving $9,100.06 available for unsecured creditors if the estate were liquidated. The Disclosure Statement also provides that the Debtors have drawn an average of between $1,500.00 to $2,000.00 per month from the estate for their personal family living expenses. In the Disclosure Statement, the Debtors valued the Peterbilt at $35,000.00 and listed encumbrances of $20,000.00 against it, but did not list the $15,000.00 equity in the truck as estate property. The Debtors' obligations on the Peterbilt payment contract between them and ITT have apparently now been fulfilled, which leaves the Peterbilt free of any security interests. However, it is still the Debtors' position that the equity in the Peterbilt Truck, which now even appears to be greater than was listed on the Disclosure Statement, is not property of the estate.

## CONCLUSIONS OF LAW

■ Only unsecured creditors objected to the Second Amended Plan of Reorganization. Their objections are all based upon their belief that they would obtain more in a Chapter 7 liquidation than they would receive under the Plan of Reorganization. One of the requirements for confirmation of a plan of reorganization is that each holder of an impaired claim must either accept the Plan or:

(ii) will receive or retain under the plan an account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date;

11 U.S.C. § 1129(a)(7)(A)(ii). This section requires that the present value of the unsecured creditors payments under a plan must be, at the date of confirmation, at least equal to what the unsecured creditors would receive if the estate were liquidated at that time. *In re Merrimack Valley Oil Co., Inc.,* 32 B.R. 485, 487 (Bankr.D.Mass. 1983).

The major issue before the court is whether the Debtors' equity in the 1980 Peterbilt is property of the estate or excepted from the estate pursuant to § 541(a)(6). After wrangling with the interaction between § 541(a)(6), § 1107, and § 1108, the Court concludes that the equity in the 1980 Peterbilt is property of the estate and would be available to the unsecured creditors in the event of liquidation.

When the Debtors' bankruptcy petition was filed, an estate was created which includes, among other things, legal or equitable interests of the Debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The equity which was in the Peterbilt as of the date of filing along with the contractual right to purchase the truck from ITT is estate property. The Debtor contends that the equity which he built up in the truck as a consequence of his payments on the purchase

contract is attributed to earnings from services performed by him individually after the commencement of the case and thus is excepted from the estate pursuant to § 541(a)(6). The Debtor likens his situation to that of a debtor who obtains employment, subsequent to filing a Chapter 11 petition, completely removed from the estate. In most cases, such a debtor would be allowed to retain the earnings attributed to his services, free and clear of the estate. Such an analogy, however, is not tenable in view of bankruptcy law and the practical operation of non-corporate reorganizations.

The Debtor, as a Debtor-In-Possession of his estate, has a duty to operate the estate and perform all of the functions of a trustee except he is prohibited by § 1107 from obtaining compensation for his services pursuant to § 330. The Debtor is attempting to reorganize his farming and commercial trucking operation in his capacity as Debtor-In-Possession. If the value of the estate had declined during bankruptcy, the creditors of the estate would be those who would suffer. Likewise, if the value of the estate is enhanced during bankruptcy, those creditors should also be entitled to share in the increased value.

The following are examples of instances in which courts have found the exception to § 541(a)(6) applicable: In *In re Lotta Water Land Company*, 25 B.R. 32, 34 (Bankr. N.D.Tex.1982), the debtors, the sole stockholders of a farming corporation which conducted farm and ranch activities along with a custom farming business, announced that the corporation could not submit an operating plan and subsequently the debtors were cut from the corporate payroll. When the imminent death of the corporation became apparent, the debtor leased a combine, not property of the estate, from relatives and commenced custom farming on a full time basis and grossed $30,000.00 to $40,000.00 from his efforts. This income was excepted from the estate pursuant to § 541(a)(6). Id. at 36.

In support of its position, the Debtors rely heavily on *In re FitzSimmons*, a Ninth Circuit case, which held that a Chapter 11 debtor, whose estate included his law practice which he was operating as debtor-in-possession, was allowed by § 541(a)(6) to except from his estate only those earnings personally performed by him. *In re FitzSimmons*, 725 F.2d 1208, 1211 (9th Cir. 1984). Earnings attributable to business invested capital, accounts receivable, goodwill, employment contracts, client relationships, fee arrangements or the like, however, became property of the estate. *Id.* This court is not bound, nor inclined, to follow the Ninth Circuits rationale in *FitzSimmons*. A debtor-in-possession is working for the estate, and in the case of farmer or small business reorganizations, the debtor-in-possession is very much a part of the estate; without him the estate would probably face immediate liquidation. In his position as a debtor-in-possession, the debtor is generally allowed to draw cash from the estate to maintain basic personal living expenses. *In re Sutton Investments, Inc.*, 49 B.R. 891 (Bankr.W.D.La.1985). Brusseaus have drawn an average of $1,500.00 to $2,000.00 per month for personal expenses throughout the course of their Chapter 11 bankruptcy. In *FitzSimmons*, the debtor-in-possession was attempting to do the same by means of drawing a salary for his personal needs. Though the Ninth Circuit language on its fact appears to benefit the debtor in *FitzSimmons*, the Brusseaus draw of $1,500.00 to $2,000.00 per month is in all likelihood more generous than even the attorney in *FitzSimmons* will obtain on final outcome of that case. After all, when one takes from a law practice the goodwill, accounts receivables, staff employment contracts and fee agreements, the attorney maintaining that practice may well find that very little of the income is actually attributed to "personal services".

The Brusseaus, during the course of their reorganization, continued with the trucking business which is the same business in which they were involved in prior to bankruptcy. Hence, any equity which the Debtors acquired in the Peterbilt Truck is property of the estate and is an asset that

would be available to unsecured creditor in a liquidation. By adding the value of the Peterbilt Truck to the $9,100.06 which the liquidation schedule shows the unsecured creditors would receive in a liquidation, the amount available to the unsecured creditors in a liquidation would then be approximately $30,000.00 to $50,000.00 exclusive of any equity which the Debtors hold in the Alloy Trailer. The Plan must provide that the present value of the payments to the unsecured creditors equal at least that amount. The present Plan does not so provide. Thus, without referring and considering whether the Plan meets the other requirements of § 1129, section 1129(a)(7)(A)(ii) is not met.

Accordingly, the Debtors' Second Amended Plan of Reorganization is NOT CONFIRMED.

IT IS SO ORDERED.