ALVIN B. RUBIN, Circuit Judge:
 

 The district court correctly held that a debtor in a Chapter 11 reorganization proceeding is not entitled to receive a monthly allowance for the support of his spouse. We, therefore, affirm its judgment.
 

 I.
 

 Robert B. Sutton had been wealthy. His holdings included a hotel, a residence in the Bahamas, a plastics factory in Denver, Colorado, a marine terminal and tank plant, and real estate in five states. His downfall came when he was charged with marketing oil at huge profits through miscertification, contrary to the regulations of the Department of Energy. After two separate criminal trials, Sutton was convicted of obstruction of justice, bribery, conspiracy and racketeering
 
 [1]
 
 and was incarcerated in the federal prison at Fort Worth, Texas, to serve sentences totalling nine years.
 

 Sutton then filed a petition for reorganization pursuant to Chapter 11 of the Bank
 
 *1306
 
 ruptcy Code
 
 [2]
 
 on April 25, 1984, as did his wholly owned corporation, Sutton Investments, Inc. The Department of Energy and the Internal Revenue Service both filed claims in the bankruptcy proceedings. The Department of Energy claim is based on a judgment against Sutton in an amount in excess of $400 million, plus interest at a daily rate of $132,000, and the IRS claim for delinquent federal taxes totals more than $475 million.
 

 After the bankruptcy proceedings were instituted, the trustee paid certain living and travel expenses of Sutton’s spouse and two minor children apparently without seeking or obtaining authorization from the Bankruptcy Court. These distributions included sums in excess of $10,000 each month to maintain a plantation style home in which Sutton’s spouse and children resided. The trustee later determined that the home was burdensome to the estate and sold it. Without objection from the creditors, the trustee purchased a smaller home in which the debtor’s spouse and children then resided. The travel expenses paid by the trustee included those incurred by the debtor’s spouse in visiting the debtor at the prison and travel expenses to the criminal trial that was conducted after the petition was filed.
 

 In April, 1985, the trustee sought direction from the Bankruptcy Court concerning “what expenses and payments, if any, should be made by the Trustee in Chapter 11 from the estate assets for the support of said wife and children.”
 

 The bankruptcy court authorized monthly support payments from Sutton’s estate in the amount of $1,500 “for the support of [Sutton’s] wife and children,” citing 11 U.S.C. § 105 as authority for its asserted equitable power to make the award.
 
 [3]
 
 The court based its opinion on the thesis that the debtor had a continuing duty to support his spouse and children. The district court reversed, finding that neither the debtor nor any member of his family performed services of benefit to the bankruptcy estate that would justify distributions to them. It held that there was no provision in the Bankruptcy Code that authorized a family support allowance in a Chapter 11 reorganization proceeding.
 

 II.
 

 In enacting the Bankruptcy Code, Congress sought to strike a balance among the competing interests of debtors, creditors and the government.
 
 [4]
 
 Insofar as a debt- or’s obligation to support his family is concerned, Congress created a complete statutory scheme, striking the balance in favor of allowing claims for support against the assets of the bankruptcy estate only for “matured” amounts, that is, amounts due under a valid court order or decree that had accrued at the time the petition in bankruptcy was filed.
 

 Under prior law, the Supreme Court had held that the marital or parental duty to support a spouse or children was not a “debt” and, thus, was not provable under the Bankruptcy Act
 
 [5]
 
 even if the obligation was evidenced by a decree or judgment.
 
 [6]
 
 In 1903, congress amended Section 17 of the Bankruptcy Act
 
 [7]
 
 so as to except explicitly from discharge liabilities for alimony, maintenance, and support that were due or to become due. The Supreme Court treated this amendment as declaratory of case law and adhered to its position on the non-provability of such obligations.
 
 [8]
 
 A body of case law ultimately developed in the lower courts, however, that permitted a spouse to
 
 *1307
 
 prove a claim against a bankruptcy estate for such amounts as were the subject of a decree that was not subject to further modification and were past due at the time the petition was filed.
 
 [9]
 

 Under the Act, the courts began to allow claims for support obligations that were matured,
 
 i.e.,
 
 past due when the petition in bankruptcy was filed.
 
 [10]
 
 Collier on Bankruptcy states that this resolution of family support obligations struck a proper balance between other creditors and the debtor’s spouse. It recognized “to the largest possible extent the bankrupt’s legal duty to support his dependents.” On the other hand, this policy relieved creditors from the reduction of their distributive share for claims that would become due only in the future.
 
 [11]
 

 When Congress enacted the Bankruptcy Code, it struck a balance between these competing sets of policy considerations. Three provisions of the Code operate together to establish a scheme under which only matured obligations for support, maintenance, and alimony are allowable against the assets of the bankruptcy estate. Post-petition obligations for support are collectible directly from the debtor out of the property set aside to him as exempt or acquired by him after the petition is filed.
 

 Section 523(a)(5) of the Bankruptcy Code renders obligations for alimony, maintenance, or support nondischargeable. In turn, Section 502(b)(5)
 
 [12]
 
 disallows claims against the bankruptcy estate for alimony, support and maintenance that are not matured on the date the petition for relief under the bankruptcy laws is filed. Thus, unmatured claims for alimony, support and maintenance that are non-dischargeable are not allowable against the assets of the bankruptcy estate. Such obligations, however, are collectible from the debtor personally, and Section 362 excepts from the automatic stay attempts to collect obligations of this type from property that is not property of the bankruptcy estate.
 
 [13]
 
 The legislative history of the relevant provisions confirms their plain meaning.
 
 [14]
 

 Sutton’s spouse is not seeking to claim a distribution from the bankruptcy estate for amounts due under a decree ordering Sutton to pay her support. The balance struck by Congress among the competing interests of creditors, the debtor, disposes of Sutton’s argument that Section 105(a) authorizes distributions for post-petition support payments.
 

 As the district court correctly recognized, Section 105(a)
 
 [15]
 
 simply authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code. The section is described in the legislative history as being “similar in effect to the All Writs Statute.”
 
 [16]
 
 Thus, it authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction.
 
 [17]
 

 
 *1308
 
 While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code.
 
 [18]
 
 That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law,
 
 [19]
 
 or constitute a roving commission to do equity.
 

 Sutton asserts that the payments can be regarded as compensation for “smoothing over the rough spots in their rocky relationship between the debtor and the trustee.” But the only testimony concerning any services of this type was to the effect that payments already made by the trustee to Sutton’s wife for her travel expenses were incurred for the purpose of obtaining information from Sutton. There was neither testimony that compensation was to be paid for these “services” nor evidence that she should be providing any services to the estate in the future.
 

 The distributions were, therefore, not justifiable as compensation to Sutton’s spouse for services she rendered to the bankruptcy estate, hence administrative expenses. In any event, the bankruptcy court purported to make an award for the support of the debtor’s spouse not compensation for her services.
 

 We have held that the Act gave bankruptcy courts no authority to grant compensation that was not expressly allowed by statutory provision.
 
 [20]
 
 The Code embodies the same policy.
 
 [21]
 

 For these reasons, the judgment is AFFIRMED.
 

 [1]
 

 .
 
 See United States
 
 v.
 
 Sutton,
 
 732 F.2d 1483 (10th Cir.1984),
 
 cert. denied,
 
 — U.S.-. 105 S.Ct. 903, 83 L.Ed.2d 919 (1984).
 

 [2]
 

 . ll U.S.C.
 

 [3]
 

 . 49 B.R. 891 (W.D.La.1985).
 

 [4]
 

 . H.R.Rep. No. 95-595, 95th Cong., 1st Sess. at 274 ([1978-5] U.S.Code Cong. & Ad.News 5963, 6231.); S.Rep. No. 95-989, 95th Cong. 2d Sess. at 13-14 ([1978-5] U.S.Code Cong. & Ad.News 5787, 5799-5800).
 

 [5]
 

 . Ch. 541, 30 Stat. 544 (11 U.S.C. § 103).
 

 [6]
 

 .
 
 Auaubon
 
 v.
 
 Shufeldt,
 
 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901);
 
 Wetmore
 
 v.
 
 Markoe,
 
 196 U.S. 68, 74 (1904).
 

 [7]
 

 . 11 U.S.C. § 35.
 

 [8]
 

 .
 
 See generally
 
 3A Collier on Bankruptcy, ¶ 6.13 at 1838-1840 (14th ed. 1976).
 

 [9]
 

 .
 
 See Heimberger v. Joseph,
 
 55 F.2d 171 (6th Cir.1931); 3A Collier on Bankruptcy,
 
 supra,
 
 at 1839.
 

 [10]
 

 . 3A Collier on Bankruptcy,
 
 supra
 
 at 1839-1840.
 

 [11]
 

 .
 
 Id.
 

 [12]
 

 . Formerly Section 502(b)(6) prior to the amendments made by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, Sec. 445.
 

 [13]
 

 .
 
 See, e.g., In re Jackson,
 
 48 B.R. 616 (Bankr.W.D.Ky.1985);
 
 In re Mack,
 
 46 B.R. 652 (Bankr.E.D.Pa.1985);
 
 In re Murray,
 
 31 B.R. 499 (Bankr.E.D.Pa.1983).
 

 [14]
 

 .
 
 See
 
 H.R.Rep. No. 95-595,
 
 supra
 
 at 364; S.Rep. No. 95-989,
 
 supra,
 
 at 79; 124 Cong.Rec. 32350, 32399.
 

 [15]
 

 . That section provides:
 

 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
 

 [16]
 

 . 28 U.S.C. § 1651. H.R.Rep. No. 95-595,
 
 supra,
 
 at 316, ([1978-5] U.S.Code Cong. & Admin. News p. 6273).
 

 [17]
 

 .
 
 See generally,
 
 5 Collier on Bankruptcy, j[’s 105.02, 105.03 (15th ed. 1985).
 

 [18]
 

 .
 
 See Johnson v. First Bank of Montevideo, Minn.,
 
 719 F.2d 270, 273 (8th Cir.1984),
 
 cert. denied,
 
 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984);
 
 In re Texas Consumer Finance Corp.,
 
 480 F.2d 1261, 1265 (5th Cir.1973).
 

 [19]
 

 .
 
 Southern Ry. Co.
 
 v.
 
 Johnson Bronze Co.,
 
 758 F.2d 137, 141 (3d Cir.1985).
 

 [20]
 

 .
 
 See In re First Bond & Mortgage Co.,
 
 74 F.2d 930, 932 (5th Cir.1935);
 
 Crutcher v. Logan,
 
 102 F.2d 612 (5th Cir.1939).
 
 See also Lane v. Haytian Corporation of America,
 
 117 F.2d 216, 219 (2d Cir.1941),
 
 cert. denied,
 
 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941);
 
 Guerin v. Weil,
 
 205 F.2d 302 (2d Cir.1953);
 
 In re Eureka Upholstering Co.,
 
 48 F.2d 95 (2d Cir.1931).
 

 [21]
 

 .
 
 In re Fox,
 
 725 F.2d 661, 663 (11th Cir.1984);
 
 In re Howerton,
 
 23 B.R. 58 (N.D.Tex.1982).