# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30757

———————

In the Matter of Thornhill Brothers Fitness, L.L.C.,

*Debtor*,

Anytime Fitness, L.L.C.,

*Appellant*,

*versus*

Thornhill Brothers Fitness, L.L.C.; William Flynn;
Billie Flynn,

*Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CV-2074

———————————————————

Before Richman, *Chief Judge*, and Southwick and Oldham, *Circuit Judges*.

Per Curiam:

The question presented is whether 11 U.S.C. § 365(f), or any other portion of Title 11, authorizes a bankruptcy court's approval of a debtor's *partial* assignment of an executory contract. It does not. We reverse the

No. 22-30757

bankruptcy court's contrary order and remand for further proceedings consistent with this opinion.

I.

In November 2019, William Flynn attempted to use an "inversion table" located at an Anytime Fitness franchise location in Port Allen, Louisiana. The equipment allegedly failed, and Flynn suffered neuromuscular injuries. In February 2020, Flynn filed a personal injury suit in Louisiana court against the franchise owner, Thornhill Brothers Fitness, LLC ("Thornhill"). An amended complaint named an additional defendant, franchisor Anytime Fitness, LLC ("Anytime").

Anytime fought the complaint, arguing that the presence of the inversion table at the Thornhill location was unauthorized by the Thornhill-Anytime franchise agreement and that Anytime was, for other various other reasons, not liable for Flynn's injuries. A Louisiana trial court dismissed Anytime with prejudice. An intermediate Louisiana appellate court affirmed. *See Flynn v. Anytime Fitness, LLC*, 360 So.3d 860 (La. App. 1st Cir. 2022).

But Flynn's case against Thornhill continued. A Louisiana district court announced that a multi-day jury trial would begin on March 21, 2022. Five days beforehand, at 3:15 PM on March 16, 2022, Thornhill filed a voluntary petition for bankruptcy. The petition disclosed only one significant non-insider liability—Flynn's litigation claim—in an "unknown" amount above $1 million.

Events thereafter moved quickly. By 2:00 PM on Friday, March 18, 2022, or less than 48 hours after the predicate bankruptcy, Thornhill's counsel emailed the bankruptcy court announcing that "much negotiation" had produced a settlement. Counsel requested "a wet signature" from the bankruptcy judge to approve the settlement. That afternoon, the bankruptcy judge sent Thornhill's counsel an SMS message with a photograph of the

signed draft order approving the settlement. *See* FED. R. BANKR. P. 9019(a) (authorizing the bankruptcy court's approval of a debtor's litigation settlements).

The settlement came in the form of several documents. One, which the parties call "the Stipulation," bears emphasis and explanation. The Stipulation gave the Flynns $1 million and resurrected the Flynns' ability to sue Anytime—notwithstanding the previous court order dismissing the Flynns' claims against Anytime with prejudice. Specifically, Thornhill agreed that its insurer would pay the Flynns $1 million plus judicial interest— the maximum amount allowed by the insurance policy. Thornhill also agreed to sign a document dubbed the "Confession of Judgment," to be entered in the Louisiana court where the Flynns' personal injury lawsuit was pending. In this "confession," Thornhill admitted to $7 million in total liability to the Flynns. Then Thornhill agreed to assign all rights it had "against Anytime Fitness LLC" to the Flynns, including any rights arising from "the indemnity agreement contained in the Franchise Agreement" between Thornhill and its franchise parent, Anytime. Thornhill otherwise retained the franchise agreement. The upshot: The Flynns recovered at least $1 million and as much as $7 million.

Thornhill also made out like a bandit in the Settlement. The Flynns agreed that Thornhill would remain a defendant in the personal injury lawsuit "in name only." That's because Thornhill need only be included on a jury verdict form "for purposes of recovering against Anytime." The Flynns would in any event "waive the right to pursue" Thornhill.

All of this came as quite a shock to Anytime, which thought it escaped this case when it was dismissed with prejudice in state court. Anytime did not learn about the Settlement until April 1, 2022, two weeks *after* the bankruptcy judge signed it. On April 1, the Flynns filed what Anytime calls the "New

Suits" in Louisiana court. In the New Suits, the Flynns argued that Thornhill's "confession," the indemnity provisions of the Thornhill-Anytime franchise agreement, the assignment of Thornhill's rights to Flynn, and the bankruptcy court's approval of all the foregoing together operate to make Anytime liable to the Flynns for the "confessed" amount of $7 million. Anytime obviously confessed to nothing and knew nothing of the confession before the Flynns filed the New Suits. Anytime tried to win another dismissal in state court, but this time its efforts failed. And as of today, Anytime continues to defend against the New Suits.

Anytime then protested in the bankruptcy court, arguing that the approval of the Stipulation, designed to facilitate "recover[y] against Anytime," violated Anytime's notice and hearing rights. *See* FED. R. BANKR. P. 9019(a) ("On motion by the trustee *and after notice and a hearing*, the court may approve a compromise or settlement" (emphasis added)); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The bankruptcy court vacated its prior order and allowed Anytime a hearing.

But in July 2022, the bankruptcy court entered a new order ratifying the actions it took originally. Anytime appealed that July 2022 order, and the district court affirmed. We have jurisdiction to hear Anytime's continuing appeal under 28 U.S.C. § 158(d). We review not the district court opinion but the bankruptcy court's judgment. We apply clear error review to the bankruptcy court's factual conclusions and *de novo* review to the bankruptcy court's legal conclusions. *See In re Pratt*, 524 F.3d 580, 584 (5th Cir. 2008).

## II.

Anytime raises a variety of objections on appeal. Because we agree with Anytime that that the settlement violated 11 U.S.C. § 365's provisions governing the treatment of executory contracts in bankruptcy, we decline to reach Anytime's other arguments.

We first (A) explain the Bankruptcy Code's treatment of executory contracts. Then we (B) describe the Code's all-or-nothing approach to assuming and assigning executory contracts. Last, we (C) explain the bankruptcy court's error.

## A.

The term "executory contract" refers to a contract that "neither party has finished performing." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019). The parties to this appeal appear to agree that the Thornhill-Anytime franchise agreement is an executory contract. That acquiescence comports with the views of several of our sister circuits. *See In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28 (1st Cir. 1984) (Breyer, J.) (treating Ford dealership franchise agreement as executory); *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d. Cir. 2001) (holding sale of a franchise agreement triggered protections of 11 U.S.C. § 365); *In re A&F Enterprises, Inc. II*, 742 F.3d 763, 765–67 (7th Cir. 2014) (treating IHOP franchises and associated leases as executory); *In re James Cable Partners, LP*, 27 F.3d 534, 537 (11th Cir. 1994) (describing "cable franchise agreement" as "an executory contract"). Although we hesitate to declare that franchise agreements must always and everywhere be treated as executory, it makes sense to consider them executory in the general case, because franchise agreements usually specify ongoing obligations that franchisees and franchisors have to each other.

The Bankruptcy Code gives special attention to a bankrupt debtor's executory contracts. The Code's initial premise is that a trustee in control of a post-petition debtor may, "subject to the court's approval," "assume or reject any executory contract" of the pre-petition debtor. 11 U.S.C. § 365(a).

But to assume an executory contract, the debtor must clear various statutory hurdles. For example, if there has been a default under the contract, the debtor must "cure[], or provide[] adequate assurance that the trustee will promptly cure . . . default," and provide "adequate assurance of future performance under such contract," 11 U.S.C. § 365(b)(1), unless the default stems from some exempted origin, *see id.* § 365(b)(2). Exemptions include the mere financial circumstance of insolvency or the happenstance of bankruptcy. *Id.* If the debtor successfully assumes an executory contract, then the contract "will remain in effect through and then after the completion of the reorganization." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000).

A debtor in bankruptcy may also assign its rights and obligations under an executory contract to others, but again subject to various statutory hurdles. *See* 11 U.S.C. § 365(f)(1). The debtor must first "assume[] such contract or lease in accordance with the provisions of this section." *Id.* § 365(f)(2)(A). And, even when enabled by a prior assumption, a debtor's power of assignment is not unqualified. The non-bankrupt party to the contract, the erstwhile contractual counterparty of the debtor-assignor, must be given "adequate assurance" of the assignee's "future performance." *Id.* § 365(f)(2)(B). Further, assignment can be precluded where "applicable law excuses" the counterparty from accepting performance by anyone other than the debtor. *Id.* § 365(c)(1)(A).

B.

But what happens if, say, a debtor wishes to retain only part of an executory contract? May a debtor keep the wheat and not the chaff? No. When it comes to *assuming* an executory contract, we have been clear that it's all or nothing: "An executory contract must be assumed or rejected in its entirety." *Matter of Provider Meds, LLC*, 907 F.3d 845, 851 (5th Cir. 2018) (citation omitted). "Where an executory contract contains several agreements, the debtor may not choose to reject some agreements within the contract and not others." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (per curiam) (citation omitted). A debtor cannot use § 365 to create a different deal than the one it had originally.

Does a different rule apply to assigning an executory contract? In *Provider Meds*, we all but said no, assignments are likewise all-or-nothing. *See* 907 F.3d at 851 (noting assignment can occur only after assumption in entirety and citing § 365(f)). And § 365(f), which governs a debtor's ability to assign an executory contract, refers to "an executory contract," and uses the phrase "such contract" five times. The words "an" and "such" suggest the whole, not the part. And that makes sense. After all, a § 365(f) assignment "is intended to change only who performs an obligation, not the obligation to be performed." *In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d. Cir. 2007) (quotation and citation omitted). If a debtor could strategically divide up its executory contracts via partial § 365(f) assignments, then the debtor could both change the nature of the contracts' obligations and evade our requirement that it take any retained executory contracts "*cum onere,*" with all their benefits and burdens. *Nat'l Gypsum Co.*, 208 F.3d at 506.

We reiterate our prior holdings: a debtor assuming an executory contract cannot separate the wheat from the chaff. And we make clear that,

when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part.

Although the plain language of § 365(f) suffices for our holding, other authorities reinforce it.

For example, the Supreme Court has said "Section 365 reflects a general bankruptcy rule: the estate cannot possess anything more than the debtor itself did outside bankruptcy." *Tempnology*, 139 S. Ct. at 1663 (citation omitted). In *Tempnology*, the Court considered the effect of rejection of an executory contract under § 365(a) and (g). And the Court held that a trustee's (or debtor's) rejection of a contract constituted a breach of it, not a rescission. *Id.* at 1661. That is so, the Court explained, because the debtor's contractual counterparty should retain the same rights under § 365 in bankruptcy as it would have outside of bankruptcy. *See id.* at 1663 ("By insisting that the same counterparty rights survive rejection as survive breach, the rule prevents a debtor in bankruptcy from recapturing interests it had given up."); *accord* D. Baird, Elements of Bankruptcy 97 (6th ed. 2014) (Whatever "limitation[s] on the debtor's property [apply] outside of bankruptcy[] appl[y] inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.").

So too with assignments under § 365(f). If the trustee (or debtor) could use the Code to assign a fraction of a contract that could not be assigned outside of bankruptcy, the trustee (or debtor) would arrogate to itself property it did not have before the petition. It would likewise derogate the counterparty's contractual rights that would have existed outside of bankruptcy. The all-or-nothing assignment rule under § 365(f) prevents both inequities.

We do not construe any other provision of the Code to permit circumvention of our interpretation of § 365(f). It's true that the Code contains various catch-all provisions. But we have held that those catch-alls do not create substantive powers not committed to the bankruptcy court by some other section. For example, § 105 authorizes a bankruptcy judge to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). But we have already decided that § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). A bankruptcy court's decisions and orders must rest on specific authorization from Title 11, not general efficacy or technocratic desirability, because § 105 does not convey "roving commission to do equity." *Id.*; *accord Matter of Ward*, 978 F.3d 298, 303 (5th Cir. 2020) ("[B]ankruptcy courts cannot use their equity powers under § 105 to fashion substantive rights and remedies.") (quotation and citation omitted). Our understanding of the Code's catch-alls comports with an ever-lengthening thread of Supreme Court precedent limiting the substantive power of bankruptcy courts. *See N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 88 (1982) (holding unconstitutional part of the "broad grant of judicial power" given to bankruptcy judges by the Bankruptcy Act of 1978); *Stern v. Marshall*, 564 U.S. 462, 503 (2011) (rejecting even "slight encroachments" and "silent approaches" by bankruptcy courts on Article III (quotation omitted)); *Radlax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645–47 (2012) (rejecting reliance on § 105 where more specific provisions of Title 11 could be read as controlling).

## C.

We turn now to the facts of our case. The franchise agreement forbids assignment without Anytime's consent. Anytime withheld consent. So, if Thornhill wished to assign the contract's indemnity rights to the Flynns,

Thornhill must rely on § 365(f). *See Provider Meds*, 907 F.3d at 851 (interpreting § 365(f) to permit assignment despite an anti-assignment provision).

But Thornhill did not assign the entirety of the franchise agreement to the Flynns. Rather, Thornhill assigned rights "applicable under the terms and conditions of the indemnity agreement contained in the franchise agreement." Thornhill otherwise kept the franchise agreement. Since we hold § 365(f) does not encompass such dissection, Thornhill's partial assignment is not authorized by Title 11.

The bankruptcy court bypassed Anytime's § 365 objection by noting that Thornhill assigned to the Flynns only whatever rights Thornhill had against Anytime. What if Thornhill had none? If Thornhill lacked any rights to assign, then (suggests Thornhill) the assignment of nothing offended nothing. *Nemo dat quod non habet.* The bankruptcy court accepted this logic. It also declined to interpret the franchise agreement and discern whether the set of assigned rights was empty, reasoning that the job of interpreting the franchise agreement belonged to "another forum."

We disagree. The job of discerning what if anything can be assigned under § 365(f) decidedly belongs to the bankruptcy judge, the district court, and by extension, us. The bankruptcy court applied § 365(f) to authorize something the Code forbids—the partial assignment of an executory contract. The Flynns then used that partial assignment to revivify its claims against Anytime in the New Suits. If the Louisiana state court were to find assigned indemnity rights were *not* a null set, the state court could not then refuse to honor the unlawful partial assignment. It instead would be bound by the bankruptcy court's unlawful approval of the partial assignment. That's because the bankruptcy court already gave Thornhill a preclusive judgment

authorizing that partial assignment. If we were to affirm that judgment, then the § 365 toothpaste could not be put back in the tube.

Thornhill separately argues that any defect in the bankruptcy court's order was cured by the order's compliance with *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980).[*] In *Jackson Brewing*, we prescribed a balancing test that governs a bankruptcy court's approval of a Rule 9019 compromise. *See id.* at 602 (indicating a settlement must reflect (1) "the [debtor's] probability of success in litigation," (2) "[t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay," and (3) "[a]ll other factors bearing on the wisdom of the compromise."); Fed. R. Bankr. P. 9019. In later cases, we further refined this test. *See In re Age Refining*, 801 F.3d 530, 540 (5th Cir. 2015) (noting that the third, "all other" bucket includes variables like "the best interest of the creditors" and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."). But we have never held that obedience to *Jackson Brewing* substitutes for compliance with Title 11.

On the contrary, when we prescribe tests or other guidance for a bankruptcy court's exercise of discretion, we expect that subsequent bankruptcy court orders will comply with *both* our precedent *and* the Bankruptcy Code. An order that clears one hurdle still faces the other. *See In re Moore*, 608 F.3d 253, 266 (5th Cir. 2010) (requiring that a potential compromise involving an asset sale clear both 11 U.S.C. § 363 and our requirements for Rule 9019). Since the bankruptcy court order at issue here does not satisfy § 365, it does not matter whether it satisfied *Jackson Brewing*.

---

[*] Anytime disputes the proposition that the bankruptcy court's July 2022 order complies with *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980). Because this case can be resolved on other grounds, we do not reach Anytime's argument.

No. 22-30757

\*     \*     \*

We REVERSE the bankruptcy court's July 2022 order and REMAND for further proceedings consistent with this opinion.