**In the Matter of CONTINENTAL AIRLINES, INC., et al.**

**Bankruptcy Nos. 90–932 to 90–984.**

United States Bankruptcy Court, D. Delaware.

March 2, 1992.

See also 133 B.R. 585, 134 B.R. 536, 138 B.R. 430, 138 B.R. 442.

Thomas E. Ross, Philadelphia, Pa., U.S. Trustee.

Ellen W. Slights, Asst. U.S. Atty., Wilmington, Del., Robert K. Coulter, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Robert J. Rosenberg, Bennett J. Murphy, New York City, Peter J. Walsh, Wilmington, Del., for Official Committee of Unsecured Creditors.

William L. Witham, Jr., Norman L. Pernick, Wilmington, Del., for The Pension Ben. Guaranty Corp.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On January 8, 1992, this court issued an order retaining an examiner on fees and expenses. Several parties responded by the February 3 objection deadline—the United States Trustee, the United States of America, the Official Committee of Unsecured Creditors of Continental Airlines, Inc., and the Pension Benefit Guaranty Corporation.

*The objections of the United States Trustee*

■ The United States Trustee objects to the order for several related reasons. He asserts the order is inconsistent with various requirements of subsections 1104(b) and 1104(c) of Title 11 of the United States Code. This objection assumes either that the examiner was appointed pursuant to section 1104, or will undertake responsibilities similar to an examiner appointed pursuant to that section.

These assumptions are mistaken. First, as the United States Trustee itself observes in its objection, the fee examiner was appointed pursuant to 11 U.S.C. § 105 (1988), to implement the provisions of the Bankruptcy Code. As the Continental Creditors Committee states in its response in support of the order:

[T]he fees and expenses requested in this case are very substantial, and will diminish the assets of the estates to the detriment of creditor recovery.... An impartial Fee Examiner [will] assist the Court and all parties in interest in determining whether the fees requested are 'actual and necessary'....

In particular, ... [consultation with the applicants] will increase the efficiency of representation, and conserve the assets of the estates.

Case No. 90–932, Docket No. 3178, at 1–2 (February 3, 1992). Thus, the order will implement 11 U.S.C. § 330. *See also* § 330, House Report (section 330 intended to reduce the cost of administering bankruptcy cases). Any apparent specific reliance upon sections 1104(a) or 1106(a) of the Bankruptcy Code is disavowed.

■ Second, the functions of the fee examiner are dissimilar to those of an examiner appointed pursuant to section 1104. The United States Trustee itself makes this point in its objection. The court chose the word "examiner" as the designation for the entity that will be responsible for initially reviewing fee applications for reasons of convenience only. The plain english meaning of "examiner" accords with the overall function of the fee reviewer. The term has been previously used by other courts. The entity Professional Fee Examiners itself uses the terminology.

Finally, the court observes that PFE has filed an affidavit of disinterestedness, Case No. 90–932, docket no. 3104, and a brochure of qualifications, docket no. 3068, and that PFE is not authorized to review fee applications unless and until the court resolves those objections timely filed. Thus, the order is consistent with all applicable Bankruptcy Code provisions, as section 105(a) requires. *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986).

*The Limited Objection of the PBGC*

■ The PBGC response is a limited objection that seeks to clarify the scope of the confidentiality aspects of the order. Quite simply, fee statements and fee applications continue to be of public record. PBGC will be added to the list of parties entitled to access to papers covered by the confidential aspect of the order upon execution of a confidentiality agreement.

*The Limited Objection of the United States of America*

The United States' response is a limited objection relating to sub-paragraphs 3(c), 3(d), and 3(f) of the order, which state:

c. For each application, the examiner shall file a report to the Court (under seal), the United States Trustee, the Debtor and each official committee at least ten days [before any hearing on the fees]. Also, the examiner shall serve a copy of the examiner's report for an applicant upon such applicant, subject to the same time restriction.

d. Any entity, before receiving a copy of the report as outlined in section 3(c) above, shall execute a confidentiality agreement with the examiner.

f. Any applicant may file a response under seal to the examiner's report. . . .

The United States offers at most two grounds in support of its limited objection.

■ The first ground relies upon 11 U.S.C. § 107 (1988), which provides circumstances under which papers filed in a case are not of public record. The relevant exception states:

[O]n the bankruptcy court's own motion, the bankruptcy court may—

\* \* \* \* \* \*

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). The United States contends this exception is not applicable.

This contention is incorrect. The examiner's report, in connection with any of the applications it analyzes, may state that the fees and/or expenses requested are not reasonable, actual and necessary. For example, the report may state in essence that time expended on a particular matter was of no benefit to the estate, was excessive, was charged at an excessive hourly rate, or did not occur at all. These statements *are mere allegations and not necessarily true.* The court is confident that the involved applicant would agree that these statements are potentially defamatory! Indeed, the United States has offered no law to support its position that these types of statements are not defamatory as a matter of law.

The court observes, that in attempt to avoid the insertion of such remarks of this sensitive nature, sub-paragraph 3(b) encourages the examiner, in its discretion, to consult with the affected applicant concerning charges the examiner believes do not accord with 11 U.S.C. § 330(a) (1988).

■ While it is not clear from its objection, the United States apparently also objects on the ground that parties whose claims may be diminished by payment of administrative expenses have no access to the sealed report and possible responses. To the extent that this is an independent ground, the court simply notes the following. All documents that the examiner will use in preparing its report are of public record. Any party concerned about the effect of administrative expenses upon its claim and that wishes to file an objection to any fee application is of course free to examine the public record to the same extent as the examiner. § 107.

### The Response of the Continental Creditors Committee

■ The response of the Continental Creditors Committee is not an objection. Indeed, as previously observed, the Committee supports the appointment of a fee examiner. However, the Committee seeks clarification of paragraph 1(a) of Exhibit A of the order, which states:

1.a. Intra-office conferencing. Only one professional may charge. Highest rate may be chosen.

The Committee asserts that the "intraoffice conference" designation is used on professionals' timesheets to reference activities outside the proper scope of this rule. As the Committee of Unsecured Creditors of Columbia Gas Transmission Corporation said in respect to the same issue:

These [chapter 11] cases implicate numerous areas of legal expertise in addition to bankruptcy—federal energy regulation, federal securities' laws, secured transactions, tax and litigation. . . . The attorneys performing these various activities must communicate with one another in order to represent their clients appropriately and to add value to the services rendered. Furthermore, such internal consultation benefits the estate by facilitating the coordination of effort, speeding the delivery of legal services, and preventing the need for rudimentary research.

Case No. 91–804, docket no. 274, at 2–3 (February 3, 1992).

The Continental Creditors Committee's request for clarification answers itself. As paragraph 3(e) of the order explicitly

states, the touchstone for any analysis on the appropriateness of fees sought is 11 U.S.C. § 330(a). Where time spent satisfies that statute's requirements, the billing applicant is entitled to compensation, regardless of the factual context of the activity.

Exhibit A should be read within the context it is referenced in the order, which not surprisingly is also (and only) paragraph 3(e). Paragraph 1.a. of Exhibit A refers to a common factual context of past rulings of this court where the § 330(a) requirements were not met. All such factual contexts cannot be anticipated, and thus clarification is neither practicable nor appropriate.

■ The Committee's response also seeks to clarify the scope of the order. Under section 1110 of the Bankruptcy Code, amounts required to be paid by a debtor to lessors of aircraft to cure prepetition defaults under the leases include reasonable attorney's fees. According to the Committee, the Debtors' settlements of litigation respecting their aircraft have generally provided for such fees, and that to date, over 300 fee invoices have been submitted to the Debtors totalling over $10 million. The Committee asserts, and the court agrees, that it is a substantial burden to review each of the section 1110 invoices. The Committee concludes that the order should be clarified to include these invoices among the fees that the fee examiner reviews. This will be done.

*Conclusion*

No hearing on these objections will be scheduled. No objecting party requested such a hearing, the objections are legal and not factual in nature, and the court has found each objection to be without merit. The court will issue a supplementary order consistent with this decision.