**In re CONTINENTAL AIRLINES, et al., The Columbia Gas System, Inc. and Columbia Gas Transmission Corporation, Trans World Airlines, Inc., Debtors.**

**UNITED STATES of America, Appellant,**

v.

**CONTINENTAL AIRLINES, INC., The Columbia Gas System, Inc., and Trans World Airlines, Inc., et al., Appellees.**

Bankruptcy Nos. 90–932 to 90–984, 91–803, 91–804 and 92–115.
Civ. A. No. 92–262–SLR.

United States District Court, D. Delaware.

Jan. 28, 1993.

Thomas E. Ross, Philadelphia, PA, U.S. Trustee.

William C. Carpenter, Jr., U.S. Atty., Ellen Slights, Asst. U.S. Atty., and Stuart D. Gibson, Washington, DC, for U.S.

James L. Patton, Jr., and Laura Davis Jones of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Continental Airlines, Inc., Columbia Gas System, Inc. and The Columbia Gas System, Inc.

Lewis Kruger, Robin E. Keller, and Herbert Katz of Stroock & Stroock & Lavan, and Cravath, Swaine & Moore, New York City, for Columbia Gas System, Inc. and The Columbia Gas System, Inc.

Paul P. Welsh, William H. Sudell, Jr., and Luke W. Mette of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, and Craig S. Gatarz of Jones, Day, Reavis & Pogue, New York City, for Continental Airlines, Inc. and Trans World Airlines, Inc.

Peter J. Walsh of Bayard, Handelman & Murdoch, Wilmington, DE, and Robert J. Rosenberg, Bennett J. Murphy, and Marla S. Becker of Latham & Watkins, New York City, for Official Committee of Unsecured Creditors of Continental Airlines, Inc., et al.

William L. Witham, Jr., and Norman L. Pernick of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, for Pension Benefit Guar. Corp.

## OPINION

SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

This is a consolidated appeal from several related orders of the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "court"). The Court's jurisdiction to entertain this appeal is premised on 28 U.S.C. §§ 158(a) and 1334(b).

The orders on appeal here are related in that the Bankruptcy Court made similar decisions regarding party and public access to certain materials generated in connection with the court's appointment of a fee reviewer in each of these three complex bankruptcy proceedings.[1] In particular, the Bankruptcy Court, after deciding to retain a fee reviewer (Professional Fee Examiners, Inc.) in each of these cases to assist the court in the fee application review process mandated by 11 U.S.C. § 330(a), ordered that all reports generated by the fee reviewer and all responses to the reports be filed with the court *under seal*.[2]

---

1. The fee applications reviewed by the fee reviewer are requests for payments of professional fees, such as accountants' and attorneys' fees, submitted by professionals providing services in the bankruptcy proceeding.

2. For the sake of convenience and clarity, in the remainder of this Opinion the Court will, for the most part, treat this matter as if there were only one bankruptcy proceeding involved here and as if there were only one Bankruptcy Court

The court also directed the fee reviewer to submit copies of its review reports with, and only with, the United States trustee, the debtor and the official creditors' committee, and only after those parties or their representatives executed a confidentiality agreement.

The United States formally objected to the Bankruptcy Court's order sealing the fee reviewer's reports and the connected responses on the ground that the court had no authority to enter such an order.[3] The United States contended below, as it does on appeal, that section 107(a) of the Bankruptcy Code makes public all papers filed in a bankruptcy case, and that neither of the exceptions contained in section 107(b) applies to the fee reviewer's reports and the fee applicants' responses thereto. The United States also contended then, as it does now, "that, because the public and the creditors have a vital interest in learning whether the professionals appointed by the Court and compensated by the assets of the debtors, are charging excessive or unfair fees, or are seeking reimbursement for unnecessary or wasteful activities, it is essential that the examiner's reports be made available to them." (D.I. 5 at 4) The court rejected these contentions and the United States appealed.

## II. STANDARD OF REVIEW

■ The proper standard of review to be applied by a district court reviewing the rulings of a bankruptcy court turns on the nature of the issues presented on appeal. Factual determinations of the bankruptcy court are entitled to deference and are not reversed unless found to be clearly erroneous. Bankruptcy Rule 8013; *In re Morrissey*, 717 F.2d 100, 104 (3rd Cir.1983). Legal conclusions of the bankruptcy court are subject to plenary review by the district court and are considered *de novo* on appeal. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Bankruptcy court decisions involving the exercise of discretion are reviewed for abuse of discretion. *In re Vertientes, Ltd.*, 845 F.2d 57, 58–59 (3d Cir. 1988).

■ The parties to the instant appeal disagree on the applicable standard of review. The United States contends that the Bankruptcy Court's decisions of law are at issue in this appeal and that a *de novo* standard of review, i.e., whether the court erred as a matter of law, applies here. (D.I. 5 at 1) Appellees argue, however, that the proper standard of review is whether "the Bankruptcy Court properly exercised its discretion." (D.I. 12 at 1 (citing *Reilly v. United States*, 863 F.2d 149, 154–61 (1st Cir.1988))[4]; *see* D.I. 11 at 6).

The Court concludes that the Bankruptcy Court's *sua sponte* order directing that the fee review reports and responses be filed under seal constituted an exercise of dis-

---

order on appeal. Obviously the Court's decisions herein apply with equal force to each of the orders now on appeal.

3. The United States filed its objections both on behalf of the Internal Revenue Service ("IRS"), which has filed proofs of claim totalling nearly $2 billion in these three bankruptcy cases, and "on behalf of the United States [itself], which, '[b]ecause of the vital public interest in open judicial proceedings, ... has a general overriding affirmative duty,' to oppose attempts to limit the public's access to court proceedings and records which are and should be, in general, matters of public record and public interest. 28 C.F.R. § 50.9." (D.I. 5 at 3 n. 2)

4. The reliance of Continental and TWA on the *Reilly* opinion in this context is misplaced. First, since *Reilly* was decided by the Court of Appeals for the First Circuit, it does not constitute binding authority on this Court. Clearly there is ample Third Circuit precedent regarding the proper standard of review to be applied when a bankruptcy court order is reviewed by the district court. Second, *Reilly* does not involve a bankruptcy appeal nor does it address the proper standard of review to be utilized by a district court in reviewing a bankruptcy court decision. Third, the issue addressed by the First Circuit in *Reilly* was whether "the district court abused its discretion in appointing a technical advisor...." 863 F.2d at 156. As discussed in greater detail below, the issue at bar is not whether the Bankruptcy Court erred or abused its discretion in appointing a fee reviewer. Rather, the issue presented here is whether the court erred in its decision to (1) seal both the fee reviewer's reports and the fee review report responses and (2) share those materials with some, but not all, interested parties to this dispute.

cretion. More specifically, it is clear that the Court exercised its discretion pursuant to section 107(b) of the Bankruptcy Code in deciding to seal the reports and responses generated by the fee review process. In rejecting the United States' objections to the closed fee review process, the Bankruptcy Court stated the following in its now-reported Opinion:

> The first ground [the United States offers in support of its limited objection] relies upon 11 U.S.C. § 107 (1988), which provides circumstances under which papers filed in a case are not of public record. The relevant exception states:
>
>> [O]n the bankruptcy court's own motion, the bankruptcy court may—
>>
>> \* \* \* \* \* \*
>>
>> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.
>
> 11 U.S.C. § 107(b). The United States contends this exception is not applicable.
>
> This contention is incorrect. The examiner's report, in connection with any of the applications it analyzes, may state that the fees and/or expenses requested are not reasonable, actual and necessary. For example, the report may state in essence that time expended on a particular matter was of no benefit to the estate, was excessive, was charged at an excessive hourly rate, or did not occur at all. These statements *are mere allegations and not necessarily true.* The court is confident that the involved applicant would agree that these statements are potentially defamatory! Indeed, the United States has offered no law to support its position that these types of statements are not defamatory as a matter of law.
>
> The court observes, that in an attempt to avoid the insertion of such remarks of this sensitive nature, subparagraph 3(b) [of the court's Order] encourages the examiner, in its discretion, to consult with the affected applicant concerning charges the examiner believes do not accord with 11 U.S.C. § 330(a) (1988).

> While it is not clear from its objection, the United States apparently also objects on the ground that parties whose claims may be diminished by payment of administrative expenses have no access to the sealed report and possible responses. To the extent that this is an independent ground, the court simply notes the following. All documents that the examiner will use in preparing its reports are of public record. Any party concerned about the effect of administrative expenses upon its claim and that wishes to file an objection to any fee application is of course free to examine the public record to the same extent as the examiner. § 107.

*In the Matter of Continental Airlines, Inc.,* 138 B.R. 439, 441 (Bankr.D.Del.1992).

The court's Memorandum Opinion and Order contained no other grounds in support of its decision to close access to the fee review reports and responses, and the parties have not cited nor is the Court aware of any other authority upon which the Bankruptcy Court relied in rendering its decision to close access to these papers. Thus, section 107(b) provided the only legal authority in support of the court's decision to limit party and public access to the fee review reports and responses.

In addition, the Court finds that issues regarding public disclosure of papers filed in connection with bankruptcy proceedings generally should be resolved under section 107 since Congress has promulgated an express statutory scheme addressing "[p]ublic access to papers" filed in bankruptcy cases. Section 107 provides the following:

**Public access to papers**

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107.

As the Bankruptcy Court itself recognized, since the court's decision to retain a fee reviewer and to limit access to the fee review reports and responses was made *sua sponte*, the portion of section 107(b) which provides that "the bankruptcy court *may* protect an entity [or] ... a person" on its "own motion" is the provision applicable here. Federal courts in this circuit, as well as other circuits, consistently have held that where a decision of the bankruptcy court was made pursuant to a "flexible" code provision, such as one providing that the court "may" take certain action under appropriate circumstances, the proper standard of review to be applied on appeal is whether the court's decision constituted an abuse of discretion. *See, e.g., Vertientes, Ltd.*, 845 F.2d at 59; *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir.1989); *In re Hammond*, 140 B.R. 197, 200 (S.D.Ohio 1992) (the term "may" "connotes discretion"). The decisions of the Bankruptcy Court at issue here will be reviewed under the abuse of discretion standard because section 107(b), upon which the court relied, sets forth a flexible or discretionary standard under which the court, on its own motion, *"may"* depart from the general rule that "all papers filed in a bankruptcy case ... [shall be] open to public examination." [5]

## III. DISCUSSION

Before turning to the narrow legal issues at bar, some general observations regard-ing the background of this appeal are appropriate. This Court recognizes that the three bankruptcy proceedings from which the instant appeal arises, which proceedings were litigated contemporaneously, confronted the Bankruptcy Court, which already faced a severely overcrowded docket, with a formidable case management challenge. Indeed, it appears that the section 330(a) [6] fee review process alone presented the court with a daunting task.[7] The court specifically stated in its order retaining the fee examiner that "[n]either the [Bankruptcy] Court nor those parties responsible for reviewing the fee applications can expend the resources necessary to detect all instances where the fees sought are not 'reasonable compensation for actual, necessary services.' 11 U.S.C. § 330(a)." (D.I. 1, Designation 1 at ¶ 1)

Under the circumstances of these cases, the Bankruptcy Court is entitled to substantial deference and latitude with respect to discretionary case management decisions. Nonetheless, that interest must be balanced against the fundamental interest in having open public and party access to papers filed in judicial proceedings, an interest which has its underpinnings in First Amendment, statutory and common law rights. For reasons discussed below, the Court concludes that the Bankruptcy Court overstepped the bounds of its discretion when it barred all public and partial party access to the fee review reports and responses.

■ A bankruptcy court decision constitutes an abuse of discretion if the court failed to apply the proper legal standards or based its decision on clearly erroneous findings of fact. *See, e.g., Meridian Bank v. Alten*, 958 F.2d 1226, 1230 n. 2 (3d Cir.1992); *United States v. Stavriotis*, 129 B.R. 527, 529 (N.D.Ill.1991), *aff'd*, 977 F.2d

---

5. Advisory Notes to § 107 (Notes of Committee on the Judiciary, Senate Report No. 95–989).

6. This section provides, in relevant part, that "[a]fter notice to any parties in interest and to the United States Trustee and a hearing, ... the court may award ... (1) reasonable compensation for actual, necessary services by [a] trustee, examiner, professional person, or attorney ...;

and (2) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).

7. "For example, Latham & Watkins' August 1991 request for only $457,900 of the $38.5 million requested in the *Continental* cases contains 170 pages of timesheet entries and 110 pages of receipts for expenses." (D.I. 11 at 8 n. 3)

1202 (7th Cir.1992); *In re Hammer*, 112 B.R. 341, 345 (9th Cir.Bankr.Appel.Panel 1990), *aff'd*, 940 F.2d 524 (9th Cir.1991); *In re Metro Transp. Co.*, 107 B.R. 50, 51–52 (E.D.Pa.1989). As alluded to above, the decision at issue here is the court's order directing that the reports and responses generated in connection with the fee review process be filed with, and only with, the court under seal and the United States trustee, the debtor, and the official creditors' committee under a confidentiality agreement. Accordingly, certain parties in interest, such as the IRS, which seek to "review[ ] the fee applications [and which] can [not] expend the resources necessary to detect all instances where the fees sought are not 'reasonable compensation for actual, necessary services....'", (D.I. 1, Designation 1 at ¶ 1), have been denied access to the reports and responses arising from the devised fee review procedure. Furthermore, as noted above, the public also has been denied any access whatsoever to the fee reviewer's reports and the responses thereto.[8]

The fee reviewer's reports apparently contain two types of material that should be separated for analytical purposes. First, the reports contain factual data taken from the fee applications themselves. This factual information was to be put "in a format ... designed to quantify and present factual data so as to assist the Court to effectively and efficiently perform a § 330 analysis and determine whether requested fees and expenses meet standards applicable in this court." (D.I. 1, Designation 1 at ¶ 2(e))

 As to those portions of the reports which contain factual information, there can be no argument that the court lacked authority to seal such material. *See In re Lomas Financial Corp.*, No. 90 Civ. 7827 (LLS), 1991 WL 21231, 1991 U.S. Dist. LEXIS 1589 (S.D.N.Y. Feb. 11, 1991) (bankruptcy court order sealing document is "overbroad" where entire document was sealed though "[o]nly four sentences contain[ed] the offending material"). As the Bankruptcy Court itself recognized, "[a]ll documents that the [fee reviewer] will use in preparing its reports are of public record." *Continental Airlines, Inc.*, 138 B.R. at 441. Thus, insofar as the material contained in the fee examiner's reports is merely factual information which already is "of public record," obviously there is nothing to be gained nor is anyone to be "protect[ed]" by its closure. *See In re Overmyer*, 24 B.R. 437, 442 (Bankr.S.D.N.Y. 1982) (court filings containing references to matters which already are "of public record" "can hardly be characterized as confidential, scandalous or defamatory" and are not "within the protection afforded by ... 11 U.S.C. § 107(b)(2)").

Moreover, it is clear that the factual portions of the fee reviewer's reports were not in any way defamatory; they simply consisted of factual materials and data apparently taken from the fee applicants' own applications and from other parts of the record. Thus, the factual information contained in the fee reviewer's reports would not include defamatory statements unless the fee applicants defamed themselves in their own fee applications or unless the record already contained defamatory matter. Nothing in the record, including the briefs submitted by the appellees and the Bankruptcy Court's own opinions and orders, indicates that the factual portions of the fee reviewer's reports contain defamatory statements. Accordingly, these portions of the reports were not properly sealed under the authority of section 107(b) since the factual information contained therein was truthful and was not defamatory. *See In re Whitener*, 57 B.R. 707, 709 (Bankr.E.D.Va.1986) ("dissemination of truthful matter cannot be enjoined merely because the matter is prejudicial; section 107(b)(2) requires that the matter be scandalous or defamatory"); *see also In re Northern Energy Products*, 7 B.R. 473, 474 (D.Minn.1980).

---

**8.** The Court notes that it has not been provided with copies of any of the relevant sealed materials for an *in camera* review.

■ The second type of information apparently contained in the fee reviewer's reports are statements to the effect "that the fees and/or expenses requested are not reasonable, actual and necessary, [or that] time expended on a particular matter was of no benefit to the estate, was excessive, was charged at an excessive hourly rate, or did not occur at all." *Continental Airlines, Inc.*, 138 B.R. at 441. These statements are in the nature of legal and analytical opinions and conclusions based on factual matters which, as just discussed, were already of record and were not defamatory. These statements are the type of legal conclusions or assertions that one would make after applying the section 330(a) standards to a particular fee application.

Section 330(a) requires a bankruptcy court to ensure that the services provided by a professional were "actual [and] necessary" before awarding fees. In other words, the court must apply the "actual [and] necessary services" *legal standard* to the relevant facts stemming from the fee application before it and render a legal conclusion before it gives a fee award. When a court decides that a particular fee application should be denied because it seeks payment for services that, in the court's opinion, were not "actual [and] necessary services," the court is rendering a legal conclusion. Likewise, the fee reviewer was rendering legal conclusions or recommendations insofar as its reports stated "that the fees and/or expenses requested [were] not reasonable, actual and necessary, [or that] time expended on a particular matter was of no benefit to the estate, was excessive, [or] was charged at an excessive hourly rate." [9]

■ The Court finds that the Bankruptcy Court's decision to deny party and public access to the fee reviewer's conclusions and opinions was an abuse of discretion. As an initial matter, in order for the bankruptcy court, *sua sponte*, to have sealed the court records, filings and papers pursuant to its discretionary authority under section 107(b)(2), the burden rests on the court to show " 'that the interest in secrecy outweighs the presumption' in favor of access." *See In re Revco D.S., Inc.*, 1990 WL 269887, 1990 Bankr. LEXIS 2847, *3 (Bankr.N.D. Ohio Dec. 30, 1990) (quoting *Waste Management Inc. v. Chemlawn Corp.*, No C–2–87–254 (S.D. Ohio Nov. 23, 1987) (quoting in turn *Bank of America Nat'l Trust & Savings Assoc. v. Hotel Rittenhouse Associates*, 800 F.2d 339, 344 (3d Cir.1986))). Furthermore, the court must provide specific legal authority supporting its conclusion that the particular matters at issue are properly classified as "defamatory", a term which is well-defined under the common law.

The Bankruptcy Court did neither in this case. The court cited (and the record contains) no authority to support the contention that a fee reviewer's opinions and conclusions, based on non-defamatory record evidence submitted by the applicants, are even potentially defamatory in nature. Significantly, such legal recommendations and assertions are proffered routinely by judicial officers in cases like the one at bar. If such legal recommendations and assertions, required to be rendered by statutory and caselaw authority, were sealed based on nothing more than the mere possibility that they contain "defamatory" assertions,[10] the judicial system would be thwarted in its mandated responsibility to supervise litigation expenses. *See In re Analytical Systems, Inc.*, 83 B.R. 833, 836 (Bankr.N.D.Ga.1987) ("possible embarrass-

---

**9.** In its order retaining the fee reviewer, the Bankruptcy Court explicitly stated that the fee reviewer "shall not make nor offer any legal conclusions [in its reports]." (D.I. 1, Designation 1 at ¶ 3(e)) If it were true that the reports contained no legal conclusions and contained no statements to the effect that certain services were not actually provided or were not necessary, and instead contained only factual information gathered from matters of record, then, as discussed above, there would be no basis

whatsoever, nor has any been offered, for sealing the reports.

**10.** Again, the Court emphasizes that the sealed documents in this case have not been produced for this Court's review. Therefore, this Court must accept as true that the possibility of there being defamatory remarks was and remains nothing more than speculation on the court's part.

ment" to a party "is not a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records"); *In re Itel Corp.,* 17 B.R. 942, 944 (9th Cir.Bankr.App. Panel 1982) (information not properly sealed under section 107(b) when it merely was "conceivable" and was "not likely" that it would fall in the category of protected confidential commercial information).

Given the strong presumption in favor of public access to judicial records and papers, which has statutory [11], common law [12] and First Amendment [13] underpinnings, clearly the public's interest in seeing that the judicial mandate to control litigation expenses far outweighs any private interest in secrecy.[14] As appellant the United States argues:

> [T]he professionals employed in these three cases have, thus far [i.e., in June 1992] billed these Estates for fees and expenses exceeding $68 million—90% ($61.2 million) of which has already been paid, and all of which (subject to approval) will be paid before any unsecured creditor receives payment of any portion of its pre-petition claims....
>
> [I]t is disingenuous ... for [appellees] and [their] lawyers to argue that they ... should be the sole guardians of the only prejudicial, independent analysis of their attorneys' [and other retained professionals'] conduct. Indeed, it follows without any thought whatsoever that the

Court's truth-finding process (not to mention the efficient administration of the Bankruptcy Code) can only be enhanced by the wide dissemination of the [fee reviewer's] reports....

(D.I. 13 at 8–9) [15] And, indeed, one is compelled to "question whose interests are served" by the appellees' opposition, when it is only the lawyers and other professionals submitting fee applications "who stand to benefit from stifling the examiner's criticism of their fees or performance." (D.I. 13 at 9 n. 8)

It is useful at this juncture to discuss the proper characterization of the fee reviewer. The parties' briefs are replete with discussions regarding the effect of Bankruptcy Code sections 1104 and 1106, which govern the appointment of examiners and trustee, on the issue at bar. (See D.I. 13 at 2–5; D.I. 11 at 10–12) These discussions assume that the fee *reviewer* "retained" by the Bankruptcy Court was an "examiner" within the meaning of sections 1104 and 1106.[16]

Significantly, the Bankruptcy Court was presented with objections to its order retaining the fee reviewer on the ground that certain portions of the court's order were inconsistent with the requirements of section 1104. The court responded as follows:

> This objection assumes either the examiner was appointed pursuant to section 1104 or will undertake responsibilities

---

**11.** As indicated above, section 107(a) provides that "[e]xcept as provided in subsection (b) of [section 107], a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to public examination...." 11 U.S.C. § 107(a). The Advisory Notes to this section state the following: "Subsection (a) of [section 107] makes all papers filed in a bankruptcy case and the dockets of the bankruptcy court public and open to examination at reasonable times without charge. 'Docket' includes the claims docket, the proceedings docket, and all papers filed in a case."

**12.** *See, e.g., Bank of America Nat. Trust & Sav. Asso. v. Hotel Rittenhouse Associates,* 800 F.2d 339, 343 (3d Cir.1986).

**13.** *See, e.g., Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1067–71 (3d Cir.1984).

**14.** The private interest at stake here, i.e., protecting attorneys and other professionals from presumably valid criticism regarding their fee applications, is *de minimis.* Obviously, these highly sophisticated professionals are well-suited and fully able to rebut and refute any unfounded assertions regarding their fee applications. If the criticism of the professionals' fee applications were valid, then there would be no sound basis for withholding disclosure.

**15.** The Court notes in this regard that the appellant did not request a stay of the fee examination proceedings or request expedited review by this Court.

**16.** It should be noted also that the extended discussion in the brief of the creditors' committee regarding whether the court has authority or discretion to retain a fee reviewer is inapposite to the issues under discussion here. (See D.I. 11 at 6–9)

similar to an examiner appointed pursuant to that section,

These assumptions are mistaken. First, ... the fee examiner was appointed pursuant to 11 U.S.C. § 105 (1988) to implement the provisions of the Bankruptcy Code. As the Continental Creditors Committee states in its response in support of the order:

> [T]he fees and expenses requested in this case are very substantial, and will diminish the assets of the estates to the detriment of creditor recovery.... An impartial Fee Examiner [will] assist the Court and all parties in interest in determining whether the fees requested are 'actual and necessary'.... [17] In particular, ... [consultation with the applicants] will increase the efficiency of representation and conserve the assets of the estates.

... Thus, the order will implement 11 U.S.C. § 330.... *Any apparent specific reliance upon sections 1104(c) or 1106(a) of the Bankruptcy Code is disavowed.*

Second, the functions of the fee examiner are dissimilar to those of an examiner appointed pursuant to section 1104.

*Continental Airlines, Inc.,* 138 B.R. at 440 (emphasis supplied).[18] Since this well-reasoned portion of the Bankruptcy Court's Memorandum Opinion and Order stands undisturbed on appeal, the parties' discussions regarding the application and relevance of sections 1104 and 1106 to the issues at bar are misplaced.

The record also contains some discussion comparing the role of the fee reviewer to that of a law clerk or other judicial staff member. In particular, appellees contend: [T]he Fee Examiner is, in essence, an extension of the Bankruptcy Court's staff. Surely [one] would not argue that a bench memorandum from a judicial law clerk to the Bankruptcy Court containing

an analysis and review of pending fee applications should be public. The fee Examiner's reports to the Bankruptcy Court are substantially no different than such a confidential bench memorandum.

(D.I. 12 at 4)

There are at least two problems with this argument. First, as the United States contends, it would be wholly improper for the court to share its internal work product, in the manner of an improper *ex parte* contact, with some, but not all interested parties to a dispute. Second, the fee reviewer, who has been asked to file formal reports (containing factual information obtained from matters of record and legal recommendations based on application of relevant legal standards to that factual information) with the court and with some parties to the litigation, is more in the nature of a special master. There is nothing in the record and the Court is aware of no authority supporting the view that a court may appoint a special master or similar advisor and then order that advisor to make its findings available to some, but not other, parties to the dispute, or to file its findings with the court under seal.

## IV. CONCLUSION

The process devised by the Bankruptcy Court, whereby the fee reviewer's reported factual information and analytical conclusions and the fee applicants' responses thereto were shared with some, but not all, parties to this dispute and were sealed completely from public view, does not comport with our civil justice system, under which disputes are to be settled equitably, publicly and through an adversarial process that includes all interested parties.

The Court concludes that there is no sound basis in fact or in law for sealing the fee reviewer's reports and the responses [19]

---

**17.** The Court notes that these observations support the view that the fee examiner reports should be made available to all interested parties.

**18.** To avoid ambiguity, the Court herein has referred to the company retained to assist the

court in the fee review process, Professional Fee Examiners, Inc., as a "fee reviewer."

**19.** The record indicates that the responses filed to the fee reviewer's reports were sealed, much like motion papers containing reference to trade secrets or other confidential matters, only on the ground that they might contain references to

to the reports. Furthermore, there is no sound basis for allowing some interested parties to gain access to these materials while simultaneously denying other interested parties that same access. The Bankruptcy Court abused its discretion in limiting party and public access to these court filings. Accordingly, the Court will order, effective immediately, that the Bankruptcy Court direct that all fee review reports and responses filed in this case or to be filed hereafter in these proceedings shall be unsealed (or filed normally, i.e., not under seal) and made as readily accessible to all parties in interest and the public as are all other papers filed in bankruptcy proceedings generally.

An Order consistent with this Opinion shall issue.

the purportedly defamatory matters from the fee review reports. Since the Court has determined that the fee review reports are not defamatory and that sealing these reports pursuant to

section 107(b) constituted an abuse of discretion, clearly the responses to the fee review reports also were not properly sealed.