### In re COLLINS & AIKMAN CORPORATION, et al., Debtors.

### No. 05-55927.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

May 4, 2007.

Order Appointing Fee Examiner May 24, 2007.

Christopher A. Grosman, David E. Schlackman, Joseph M. Fischer, Patrick J. Kukla, Carson Fischer, P.L.C., Bloomfield Hills, MI, Judy B. Calton, Honigman Miller Schwartz & Cohn LLP, Paula A. Hall, Butzel Long, P.C., Detroit, MI, Marc Carmel, Ray C. Schrock, Chicago, IL, Michael J. Kaczka, Shawn M. Riley, Cleveland, OH, Richard M. Cieri, New York, NY, for Debtors.

***Opinion Regarding the Appointment of a Fee Examiner***

STEVEN RHODES, Chief Judge.

This matter is before the Court on the Court's own initiative regarding the appointment of a fee examiner, as well as the U.S. Trustee's motion to appoint an examiner under 11 U.S.C. § 1104. The procedural history that led to the Court's con-

sideration of these matters is as follows. Third Avenue Trust, the largest unsecured creditor, had filed several objections to interim fee applications. Third Avenue asserted that the fees in this chapter 11 are excessive, given that the case was proceeding down the path of liquidation rather than reorganization. At the December 11, 2006 fee hearing, the Court stated that it was also concerned about the fees and invited all interested parties to file statements on whether the Court should appoint a fee examiner.

On February 20, 2007, the debtors, the official unsecured creditors committee, Third Avenue and JPMorgan Chase Bank, N.A., the agent for the pre-petition lenders, filed statements regarding the appointment of a fee examiner. The U.S. Trustee did not file a statement. However, on February 23, 2007, the U.S. Trustee filed a motion for appointment of an examiner pursuant to 11 U.S.C. § 1104. On March 5, 2007, KZC Services, LLC and John R. Boken also filed a statement regarding the appointment of a fee examiner. On March 12, 2007, following hearings on the issue of whether a fee examiner should be appointed and on the U.S. Trustee's motion for an examiner, the Court took both matters under advisement.

## I. Background

The debtors commenced these cases by filing chapter 11 petitions on May 17, 2005. The debtors have remained in possession and have operated their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No examiner or trustee has been appointed. Initially, the debtors pursued a "dual track" approach; that is, the debtors attempted to reorganize, while also keeping open the option of selling all or parts of the business.

Several parties have asserted that it became apparent in the spring and summer of 2006 that the operational, managerial and financial problems of the debtors' plastics business were far more severe than had been previously recognized. As a result, all attempts at a standalone reorganization plan have failed and efforts are now underway to sell the debtors' businesses and assets. Creditor recoveries will likely be substantially lower than initially expected.

Over twenty firms have rendered professional services chargeable to the bankruptcy estate. These firms have begun to file interim and final fee applications. The fees requested to date exceed $88 million and will undoubtedly be much higher before the case concludes. This is a list of professional fees and expenses requested to date.[1]

| Professional | Fees Requested | Expenses Requested |
|---|---|---|
| Akin Gump Strauss, Hauer & Feld | $ 5,391,126 | $ 474,465.80 |
| Alvarez & Marsal, LLC | $ 3,000,000 | $ 234,692 |
| Brinks Hofer Gilson & Lione | $ 1,588,737 | $ 218,250.15 |
| Butzel Long P.C. | $ 357,783 | $ 137,196.19 |
| CB Richard Ellis./Keen Realty | $ 119,659 | $ 419.29 |
| CONSOR Intellectual Asset Mgmt. | $ 141,960 | |
| Carson Fischer P.L.C. | $ 2,980,270.50 | $ 92,230.19 |
| Chanin Capital Partners LLC | $ 2,820,000 | $ 286,982.81 |
| Davis Polk & Wardwell | $ 8,808,413.50 | $ 997,424.49 |
| Deloitte Tax LLP | $ 2,169,423 | $ 14,171 |
| Donnelly Penman | $ 125,000 | |
| Ernst & Young LLP | $ 3,393,344 | $ 556,747 |
| Gordon Brothers Industrial | $ 851,731.78 | $ 242,311.32 |
| Haley & Aldrich, Inc. | $ 312,685.25 | $ 137,964.92 |

1. This information is from Exhibit A to docket # 4163 (prepared by Third Avenue Trust) and the Court's preliminary review of fee applications. This chart is included for demonstrative purposes and is not intended to be a factual finding.

| | | |
|---|---|---|
| Hilco Appraisal Services | $ 375,000 | $ 16,387.70 |
| KZC Services LLC | $32,002,855.50 | $3,269,993.49 |
| Kirkland & Ellis | $21,973,111.25 | $1,258,872.01 |
| Lathrop & Gage L.C. | $ 962,500 | $ 7,982.97 |
| Lazard Freres & Co. LLC | $ 2,915,000 | $ 308,632.16 |
| McDonald Hopkins Co, LPA | $ 826,538.75 | $ 270,413.27 |
| Pricewaterhouse Coopers | $ 190,121.98 | $ 5,135.98 |
| Sitrick And Company, Inc. | $ 287,951 | $ 38,133.54 |

The debtors filed their First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries on February 9, 2007. The disclosure statement was approved and a confirmation hearing is scheduled for June 5, 2007.

## II. Whether a Fee Examiner Should Be Appointed

The Court is responsible to review professionals' fees pursuant to §§ 330 and 331. To fulfill that responsibility, a bankruptcy court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors" including the time the attorneys spent on rendering such services and the rates that they charged. 11 U.S.C. § 330(3)(A). Furthermore, a court must also consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title [.]" 11 U.S.C. § 330(3)(A). A court shall not allow compensation for "unnecessary duplicative services," those services that were not "reasonably likely to benefit the debtor's estate or services that were not necessary to the administration of the case." 11 U.S.C. § 330(4)(A).

In large or particularly complex cases, the Court may appoint a fee examiner pursuant to § 105 or Fed.R.Evid. 706(a) to assist the Court in carrying out its duties. *See e.g., In re Maruko Inc.*, 160 B.R. 633 (Bankr.C.D.Cal.1993); *In re Continental Airlines, Inc.*, 138 B.R. 439 (Bankr.D.Del. 1992), *rev'd on other grounds*, 150 B.R. 334 (D.Del.1993); *In re Owens Corning*, Case No. 00–3837 (Bankr.D.Del.2000).

JPMorgan and Third Avenue filed statements in support of the appointment of a fee examiner. Both allege that questions have been raised regarding whether professionals appropriately reduced and adjusted their activities in view of the changing circumstances affecting the debtors and the chapter 11 cases. JPMorgan suggested the following questions for the fee examiner:

(a) Should any of the Estate Professionals retained by the Debtors have discovered earlier the substantial operational, managerial and financial problems at the Debtors' Plastics division and the resultant near impossibility of the Plastics division achieving management's business plan goals?

(b) If so, did the delay result in the Debtors bearing unnecessary losses and/or reductions in creditor recoveries?

(c) Once it became clear that the value of the Debtors' estate was substantially diminished and/or that a reorganization was unlikely or impossible, did any of the Estate Professionals undertake or continue work or activities that no longer were reasonably necessary under the circumstances and in view of their roles?

JPMorgan specifically stated that it had not reached a conclusion regarding any of these questions and did not wish to criticize any estate professionals.

Third Avenue, on the other hand, has been critical of estate professionals. Third Avenue asserts that it resigned from the official unsecured creditors' committee in large part due to its opinion that the professionals advising the committee were not creating additional material recoveries for the unsecured creditors, but were continuing to bill large amounts of unnecessary fees. Third Avenue asserts that the examiner should determine at what point in

time a successful reorganization was no longer an option and reduce fee applications for fees billed beyond that point in time for projects that continued down the reorganization path. Third Avenue also suggests that the fee examiner conduct a detailed line-by-line investigation of each fee application looking for duplicative efforts, wasteful expenses and transient billers.

The official unsecured creditors committee, the debtors and KZC Services filed statements opposed to the appointment of a fee examiner. The three statements are very similar. Each notes that the case is drawing to a conclusion and asserts that appointment of a fee examiner would be costly and potentially cause delay. Each statement asserts that this bankruptcy has been a "transparent process" in attempting to reorganize. Each statement asserts that the Court and the U.S. Trustee's office are in the best position to review fees due to their familiarity with the cases. The debtors and the official unsecured creditors' committee suggest a fee review panel, rather than a fee examiner.

■ The Court concludes that the magnitude of the fees in this case and the importance and complexity of the questions raised by JPMorgan and Third Avenue, make it necessary and appropriate to appoint a fee examiner to assist the Court in carrying out its responsibility to examine fees. It is clearly in the best interests of creditors and the estate for the examiner to investigate the questions raised by JPMorgan and Third Avenue Trust. However, the Court further concludes that there is no cause for a fee examiner to conduct a detailed line-by-line investigation of each fee application, as requested by Third Avenue.

Accordingly, the Court will submit to the parties for their comment a proposed order appointing a fee examiner. This proposed order will identify the proposed fee examiner, delineate the examiner's duties and establish procedures for the examiner's investigation and report to the Court.

### III. U.S. Trustee's Motion for an Examiner

The U.S. Trustee motion asserts that appointment of an examiner is mandatory under 11 U.S.C. § 1104(c)(2).

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> . . .
>
> the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(2). The U.S. Trustee asserts that because a trustee has not been appointed in this case and the unsecured debts exceed $5,000,000, the Court must appoint an examiner.

If the thresholds of § 1104(c)(2) are met, it is indeed mandatory to appoint an examiner *to conduct an investigation of the debtor. See Morgenstern v. Revco D.S., Inc. (In re Revco)*, 898 F.2d 498 (6th Cir. 1990). In the present case, there is no dispute that the unsecured debt exceeds $5,000,000, that a trustee has not been appointed and the plan has not yet been confirmed.

■ However, the U.S. Trustee is not requesting an investigation of the debtor.

The motion states "the examiner would investigate the debtors' and their professionals' administration of these cases and *report to the Court on whether the compensation requested by professionals is justified under the circumstances.*" (Emphasis added.) The motion requests examination "into the debtors' utilization of estate assets to employ professionals," "the progress of this case through chapter 11, with a particular emphasis on whether appropriate and timely decisions were made by debtor's management, the creditors' committee, and their professionals regarding whether the company should remain a going concern or should be liquidated," and whether "debtors' management took appropriate steps to manage costs, including professional fees and expenses." The motion clearly reflects a request to appoint a fee examiner. The primary investigation requested relates not to the debtors directly but rather to the conduct of the debtors' professionals and the professionals of the official unsecured creditors committee.

During the March 12, 2007 hearing, the U.S. Trustee could not articulate any need for the appointment of an examiner other than to examine professional fees. When asked what an examiner would do if the Court were to determine that § 1104 does not encompass investigation of fees, the U.S. Trustee was unable to answer. In *Revco,* the Sixth Circuit noted that even when appointment of an examiner is mandatory, "the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration." *Id.* at 501.

The Court concludes that § 1104 does not encompass the examination of professionals fees. Whether professional fees are reasonable and necessary to the estate is simply not attributable to conduct of the debtor. "[T]he functions of the fee examiner are dissimilar to those of an examiner appointed pursuant to section 1104." *In re Continental Airlines, Inc.,* 138 B.R. 439, 440 (Bankr.D.Del.1992) *rev'd on other grounds,* 150 B.R. 334 (1993).

Accordingly the U.S. Trustee's motion to appoint an examiner under 11 U.S.C. § 1104 is denied.

*Order Appointing Fee Examiner*

### 1. The Appointment of the Fee Examiner

Pursuant to Rule 706 of the Federal Rules of Evidence and 11 U.S.C. § 105, Judy A. O'Neill (the "Fee Examiner") of Foley & Lardner, LLP ("Foley"), is appointed as the fee examiner, as described in this order, to act as a special consultant and witness for professional fee and expense review and analysis. Within 14 days after the entry of this order, the Fee Examiner shall file a verified statement that complies with the last sentence of Fed. Rule Bankr.P. 2014(a) (the "Verified Statement"). The Verified Statement shall disclose the connections of Foley with respect to the list of creditors and parties in interest provided to Foley by counsel for the debtors, which list was attached to the Comments Of Proposed Fee Examiner, Judy A. O'Neill, On Proposed Order Appointing Fee Examiner, filed on May 18, 2007, as Exhibit A thereto.

### 2. The Scope of This Order

This order applies to:

(a) The fee applications of all professionals employed pursuant to §§ 327, 328 or 1103 of the Bankruptcy Code whose fees and expenses have not already been approved by final order approving a final fee application;

(b) Claims for reimbursement of professional fees and expenses under § 503(b) of the Bankruptcy Code; and

(c) Requests for reimbursement of expenses by a member of any official committee.

### 3. The Purpose of This Order

To determine the reasonableness of requests for fees and expenses as described in paragraph 2, it is necessary to determine answers to the following questions:

(a) Should the substantial operational, managerial and financial issues in the debtors' plastics division and the effect of such issues on the achievability of management's business plan goals have been discovered earlier?

(b) If so, did the delay result in either unnecessary losses or reductions in creditor recoveries?

(c) Were the key assumptions underlying management's business plan, the nature and substance of the debtors' operating challenges in the debtors' plastics division and substantive developments and changes in the debtors' views on future operating performance adequately and timely disclosed to the debtors' principal creditor constituencies?

(d) Once it became reasonably clear that the value of the debtors' estate was substantially diminished or that a reorganization was unlikely, did any of the estate professionals undertake or continue work on activities that no longer were reasonably necessary under the circumstances in view of their roles?

### 4. The Duties of the Fee Examiner and Related Procedures

The Fee Examiner's duties and powers shall be as follows:

(a) The Fee Examiner shall interview such parties and other persons and review such records, reports, pleadings or other papers as may be necessary to investigate the questions in paragraph 3 and to report on her conclusions. All parties and professionals shall, upon reasonable request, (i) provide the Fee Examiner with any and all documents relating to the purpose of this order and (ii) cooperate with the Fee Examiner in consulting with her regarding her investigation.

(b) The Fee Examiner is authorized to retain the services of (i) Foley to assist her in conducting interviews, analyzing witness statements, reviewing records, reports, pleadings or other papers and preparing necessary documents or pleadings, or for any other relevant purpose; and (ii) with Court approval, a professional business consultant to assist her in analyzing financial statements and business records or for any other relevant purpose (together with the Fee Examiner, the "Examiner Parties"). The Fee Examiner and the Examiner Parties shall not represent any of the Debtors, the professionals whose fees will be subject to review in connection with this Order (the "Subject Professionals"), the Committee members (the "Committee Members", and together with the Subject Professionals, the "Fee Issue Parties") whose reimbursements will be subject to review in connection with this Order (collectively, the "Fee Examination"), or Third Avenue Trust or JPMorgan Chase Bank, N.A., in matters related to the Fee Examination, or these cases. The Examiner Parties shall have waivers from the Fee Issue Parties to the extent the Examiner Parties represent any of the Fee Issue Parties in other unrelated matters. The Fee Examiner and any Examiner Parties shall not take part in the representation of other parties in interest in matters involving the Debtors or these cases, from and after the date hereof until the conclusion of the Fee Examination. However, professionals and paraprofessionals of the Examiner Parties who are not involved in the Fee Examination may engage in representations of other parties in interest in matters involving the Debtors or these cases unless there is an actual conflict of interest. Upon written request, the Court will

confer with the Examiner Parties regarding the application of this paragraph.

(c) The Fee Examiner shall prepare and circulate to the Fee Issue Parties, as well as to counsel for the United States Trustee, the Debtors' internal general counsel and counsel to the agent for the Debtors' prepetition senior secured lenders, a draft report summarizing the Fee Examiner's preliminary findings within 90 days of her appointment. This deadline is without prejudice to the Fee Examiner's right to request an extension for good cause. The recipients of the draft report shall consult with the Fee Examiner during the 30–day period following dissemination of the Fee Examiner's draft report (the "Consultation Period") in an attempt to reach a consensual resolution of any issues raised by the Fee Examiner's draft report. The Fee Examiner shall make available to the recipients of the draft report, documents and other information upon which she relied in drafting the report and making any findings. The Fee Examiner shall thereafter file with the Court a final report summarizing her findings, including any proposed consensual resolution of issues raised in her findings, within 15 days after the expiration of the Consultation Period. This deadline is also without prejudice to the Fee Examiner's right to request an extension of time to file the final report for good cause. Parties in interest shall have 30 days after filing of the Fee Examiner's final report to file a response to the Fee Examiner's final report.

5. The Fee Examiner's
Fees and Expenses

The fees and expenses of the Examiner Parties shall be subject to application and review pursuant to Federal Rule of Evidence 706(b) and shall be paid from the debtors' estates as an administrative expense under 11 U.S.C. § 503(b)(2). The fees and expenses of the Examiner Parties shall be Accrued Professional Compensation under the debtors' chapter 11 Plan. The compensation of the Examiner Parties shall be limited to $450,000.00, provided that such cap may be increased, without further order of the Court, upon the consent of the Debtors and the Agent for the Debtors' Prepetition Lenders, JPMorgan Chase Bank, N.A. The establishment of the foregoing cap is without prejudice to the Fee Examiner's right to seek reconsideration of the cap upon showing good cause. The fee applications of the Examiner Parties shall comply with L.B.R. 2016–1 (E.D.M.).